**WO**

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Terry Dale James, | No. CV-21-0091-TUC-JCH (EJM) |
| Petitioner, | **REPORT AND RECOMMENDATION** |
| v. | |
| David Shinn, *et al.* | |
| Respondents. | |

Currently pending before the Court is Petitioner Terry Dale James's *pro se* Amended Petition Under 28 U.S.C. § 2254 for a Writ of Habeas Corpus by a Person in State Custody (Non-Death Penalty) ("Amended Petition") (Doc. 6).  Respondents have filed a Limited Answer to Petition for Writ of Habeas Corpus ("Answer") (Doc. 21), and Petitioner has replied (Doc. 24).  The Amended Petition (Doc. 6) is ripe for adjudication.

Pursuant to Rules 72.1 and 72.2 of the Local Rules of Civil Procedure,[1] this matter was referred to Magistrate Judge Markovich for Report and Recommendation.  The Magistrate Judge recommends that the District Court dismiss the Amended Petition (Doc. 6).

. . .

. . .

. . .

. . .

. . .

---

[1] Rules of Practice of the United States District Court for the District of Arizona.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## I.   FACTUAL AND PROCEDURAL BACKGROUND

### A.   *Initial Charge, Trial, and Sentencing*

The Arizona Court of Appeals stated the facts[2] as follows:

> In 2014, James was charged in Pima County with two offenses arising from a single episode against T.H., his step-granddaughter, at some point between 2002 and 2007.   T.H. was born in 1997, and she was between six and ten years old at the time of the incident.   Count one alleged James had committed child molestation by touching her vulva with his finger; count two alleged sexual conduct with a minor based on him licking her vulva.

> Before trial, the state sought to introduce evidence of other sex acts James had committed against T.H. around the same period of time.   Those acts had been reported to, and investigated by, police in Mesa in 2006. Because T.H. was reluctant to participate in that investigation, no charges were brought in that jurisdiction.   The state further sought to introduce evidence of various sex offenses James had committed against his stepdaughter A.H., who is T.H.'s mother, when she was a child in the 1980s.   Those acts against A.H. had resulted in James pleading guilty to attempted sexual abuse.

> James opposed the state's motion and requested an evidentiary hearing in which A.H. and T.H. would testify and be subject to cross-examination.   He asserted, *inter alia*, that without such testimony the trial court could not find he had committed the other acts by clear and convincing evidence.

> After hearing argument on the motion, the trial court denied James's requested hearing.   The court then ruled the other-act evidence admissible under Rule 404(c) and made the findings required by that provision.   The court based its ruling on "the documents that the State submitted as an offer of proof."[2]   James had referred to several of those documents during the hearing, and he made no objection based on a lack of disclosure.   With two exceptions, however, those materials were never entered into the trial court's record.[3]

> At trial, A.H. testified that, from the time she was about seven years old until she was sixteen, James "would fondle [her] . . . fondle [her] vagina

---

[2] As these state court findings are entitled to a presumption of correctness and Petitioner has failed to show by clear and convincing evidence that the findings are erroneous, the Court hereby adopts these factual findings.   28 U.S.C. § 2254(e)(1); *Schriro v. Landrigan*, 550 U.S. 465, 473–74 (2007); *Wainwright v. Witt*, 469 U.S. 412, 426 (1985); *Cf. Rose v. Lundy*, 455 U.S. 509, 519 (1982).

. . . grab [her] breast . . . try to lick [her] . . . [and] take pictures of [her]." A.H. further testified that James had been convicted based on those acts. As to the Mesa incidents, T.H. testified James had touched and licked her vagina, he had rubbed his penis against her vagina on three separate occasions, and he had taken photographs of her vagina.

With regard to the charged offenses in Pima County, T.H. testified that James had told her parents he was taking her to a store in his pickup truck. He then drove her to a remote area in the desert, stopped the truck, removed her pants, licked her vagina, and touched it with his finger. In a recorded telephone conversation or "confrontation call" from 2014 admitted at trial, James apologized to T.H. for touching and licking her vagina when she was younger. He also apologized when she stated he had done "it" to her "every time" she had visited him.

When T.H. asked why he had acted this way, James explained he was sexually attracted to young girls and he found it difficult to control his impulses around them. He acknowledged he had been similarly attracted to T.H.'s mother when she was a child and, as a result, he had been convicted as a sex offender for "messing around" with her. The record of conviction the state entered into evidence showed that James had pleaded guilty in 1991 to attempted sexual abuse committed against A.H. in 1989.

---------------

[2] According to the trial court's remarks at the hearing, it had "read" T.H.'s statements in a forensic interview regarding the present offenses, a transcript of T.H.'s "confrontation call" with James, an interview between A.H. and a detective in this matter, police reports regarding the crimes against A.H., documents related to his conviction for that abuse, and police reports regarding the Mesa offenses against T.H.

[3] The parties acknowledge that a record of James's prior conviction was later admitted into evidence, and the audio recording of the telephone call between T.H. and James was admitted at trial, but not the transcript of it.

*State v. James*, 393 P.3d 467, 469–70 (Ariz. Ct. App. 2017) (alterations in original except for footnote notations).

Following a jury trial, Petitioner was found guilty of child molestation and sexual conduct with a minor under the age of twelve. *Id.* at 469. Petitioner was sentenced to enhanced, consecutive sentences with imprisonment in the Arizona Department of Corrections of twenty-one (21) years for the child molestation conviction and life with

1   the possibility of release after thirty-five years for the sexual conduct with a minor under

2   the age of twelve conviction.  *Id*.

3         **B.**    **Direct Appeal**

4        On July 7, 2016, counsel for Petitioner filed an Opening Brief asserting three (3)

5   issues for review.  Answer (Doc. 21), Appellant's Opening Br., *State v. James*, No. 2 CA-

6   CR 2015-0447 (Ariz. Ct. App. July 7, 2016) (Exh. "B") (Doc. 21-1).  First, Petitioner

7   asserted that the trial court erred when it admitted evidence of "multiple acts of

8   uncharged, aberrant sexual propensity acts under Rule 404(c) . . . based on the

9   prosecutor's submission of secret, outside-the-record materials, and after refusing to hold

10   a hearing at which Appellant could challenge the State's documentary evidence and

11   cross-examine the State's witnesses."  *Id.*, Exh. "B" at 23, 28–45.[3]  Petitioner challenged

12   the trial court's admission of other-act evidence under Rule 404(c), Arizona Rules of

13   Evidence, which permits propensity evidence in sexual offense prosecutions.  *Id.*, Exh.

14   "B" at 33.  Petitioner asserted that:

15
16
17
18
19
20
21
> A trial court may admit Rule 404(c) evidence only if it first finds that:  (1) clear and convincing evidence shows that the evidence is sufficient to permit the trier of fact to find that the defendant committed the other act, *see State v. Terrazas*, 189 Ariz. 580, 582, 944 P.2d 1194, 1996 (1997); (2) the commission of the other act provides a reasonable basis to infer that the defendant had a character trait giving rise to an aberrant sexual propensity to commit the crime charged; and (3) the evidentiary value of proof of the other act is not substantially outweighed by danger of unfair prejudice, confusion of issues, or other factors mentioned in Rule 403.  Ariz. R. Evid. 404(c)(1)(A)-(C).

22   Answer (Doc. 21), Exh. "B" at 34.  Relying on *State v. Aguilar*, 97 P.3d 865 (Ariz. 2004),

23   Petitioner argued that "due to the guilty-verdict-compelling nature of 404(c) evidence, the

24   threshold admissibility of contested 404(c) evidence must be demonstrated by clear and

25   convincing evidence at a pretrial hearing based on live witness testimony or former

26   witness testimony, subject to cross examination, with a sufficient record to permit

27   effective appellate review."  Answer (Doc. 21*)*, Exh. "B" at 36 (citing *State v. Williams*,

28

---

[3] Page citations refer to the CM/ECF page numbers, unless otherwise noted.

526 P.2d 714, 716–17 (Ariz. 1974)).  Petitioner urged that "[t]he trial court abused its discretion . . . in refusing Appellant's request for live testimony and cross-examination of the State's 404(c) witnesses."  Answer (Doc. 21), Appellant's Opening Br. at 36, *State v. James*, No. 2 CA-CR 2015-0447 (Ariz. Ct. App. July 7, 2016) (Exh. "B") (Doc. 21-1). Petitioner further argued that "the trial court . . . abused its discretion in basing its decision [to admit the 404(c) evidence] on unidentified 'police reports' and 'witness statements' in lieu of the live testimony and opportunity for cross-examination repeatedly requested by defense counsel."  *Id.*, Exh. "B" at 37 (citing *Merlina v. Jejna*, 90 P.3d 202, 204 (Ariz. Ct. App. 2004); then citing *State v. Garza*, 962 P.2d 898, 902 (Ariz. 1998)). Petitioner acknowledged that subsequent to *Aguilar*, the Arizona Court of Appeals "held that live testimony or prior testimony is not an absolute prerequisite for the clear and convincing evidence threshold of admissibility required by Rule 404(c)."  Answer (Doc. 21), Exh. "B" at 37 (citing *State v. LeBrun*, 213 P.3d 332 (Ariz. Ct. App. 2009)). Petitioner contended, however, that *LeBrun* was wrongly decided and urged the court not to follow it.  Answer (Doc. 21), Exh. "B" at 37–38.  Petitioner further asserted that even if the court found *LeBrun* to be good law, it is distinguishable because 1) there were no constitutional arguments made to the trial court, whereas Petitioner "specifically argued he was entitled to evidence brought through cross-examinable witnesses because of his constitutional rights to due process of law and the Sixth Amendment's confrontation clause"; 2) the *LeBrun* court "relied on audio and video recordings of statements by the victims in concluding that clear and convincing evidence existed to support a finding that defendant committed the offenses"; and 3) in *LeBrun* "there was no material issue of fact as to the nature of the acts that the trial court had to resolve in determining admissibility." Answer (Doc. 21), Exh. "B" at 38–39 (citations omitted).

Petitioner also contended that the trial court abused its discretion "because [it] based its decision on materials supplied to it in secret by the prosecution, and denied defense counsel's repeated and strenuous requests to base the decision instead on evidence brought through witnesses at the 404(c) hearing."   Answer (Doc. 21),

Appellant's Opening Br. at 40, *State v. James*, No. 2 CA-CR 2015-0447 (Ariz. Ct. App. July 7, 2016) (Exh. "B") (Doc. 21-1).  Petitioner asserted that "it is not proper to consider trial evidence or trial cross-examination [on appeal;] . . . [rather,] [i]n reviewing a trial court's ruling on the admissibility of 404(c) evidence, the appellate court 'consider[s] only the evidence before the court when it moved on the [404(c)] motion.'"  *Id.*, Exh. "B" at 41 (quoting *State v. Goudeau*, 2016 WL 3369231 at ¶ 60 (Ariz. June 17, 2016)) (*Goudeau* quote alterations in original).  Petitioner acknowledged that two "of the items considered by the trial court . . . were admitted at trial: the Anna Helsel prior conviction documents, and the recording of the confrontation call."  Answer (Doc. 21), Exh. "B" at 40 (citations omitted).  Petitioner averred that "there is no proof that Priors Trial Ex. #1 [wa]s the same packet of secret documents the State furnished the trial court[,]" and even if it was, "it d[id] not justify the admission of the 404(c) evidence that came in through Anna Helsel."  *Id.*, Exh. "B" at 41–42.  Petitioner further argued that "[a]t most, Priors Trial Ex. #1 established only that Appellant had been found responsible for a *single, attempted act* of sexual abuse involving Anna Helsel on *one* specific date[,]" and objected to Ms. Helsel's testimony that Petitioner abused her over an eight to nine year period.  *Id.*, Exh. "B" at 42 (emphasis in original).  Similarly, Petitioner objected to the admission of the confrontation call recording, because although it "furnished evidence of . . . sexual misconduct [against T.H.] at an unknown date and location[,] . . . T. was permitted to testify that . . . Appellant committed five different, specific acts of sexual misconduct at five different locations in Mesa."  Answer (Doc. 21), Appellant's Opening Br. at 43, *State v. James*, No. 2 CA-CR 2015-0447 (Ariz. Ct. App. July 7, 2016) (Exh. "B") (Doc. 21-1).  Petitioner urged that this error was not harmless and required reversal of his convictions and sentences.  *Id.*, Exh. "B" at 43–44.

Second, Petitioner asserted that structural error occurred "because the trial court did not instruct the jury that the State had the burden of proving Appellant was motivated by sexual interest, contrary to *Holle*."[4]  Answer (Doc. 21), Exh. "B" at 23, 45–47.

---

[4] *State v. Holle*, 358 P.3d 639 (Ariz. Ct. App. 2015).

Petitioner observed that the "jury was instructed on the elements of [A.R.S.] § 13-1410, and then instructed that 'It is a defense to molestation of a child if the defendant was not motivated by sexual interest.'"   Answer (Doc. 21), Exh. "B" at 46 (citations omitted). Petitioner further observed that "the jury was not instructed . . . about the State's burden to prove that Appellant's conduct was motivated by sexual interest." *Id.*, Exh. "B" at 46. Petitioner "acknowledge[d] that [the] Court [of Appeals] in *Holle* rejected Holle's structural error argument and found that harmless error review applied."   Answer (Doc. 21), Appellant's Opening Br. at 47, *State v. James*, No. 2 CA-CR 2015-0447 (Ariz. Ct. App. July 7, 2016) (Exh. "B") (Doc. 21-1) (citing *Holle*, 358 P.3d at 648; then citing *Neder v. United States*, 527 U.S. 1, 10–11 (1999).   Petitioner noted that the Arizona Supreme Court had "granted review of this issue on March 15, 2016[,] . . . [and he] anticipat[ed] . . . our supreme court finding the error to be structural in *Holle*." *Id.*, Exh. "B" at 47.

Finally, Petitioner argued that his "Sixth Amendment right to a jury trial was violated when the prior convictions were tried at a bench trial and not to the jury." *Id.*, Exh. "B" at 23, 48–52.   Petitioner acknowledged that "the current controlling holding on this issue by the United States Supreme court recognizes a prior convictions exception to the United States Constitution Sixth Amendment jury trial requirement[,] [which] . . . has been incorporated into the holdings of *Apprendi v. New Jersey*, 530 U.S. 455, 489–90 (2000)[;] . . . *Blakely v. Washington*, 542 U.S. 296, 301 (2004); *United States v. Booker*, 543 U.S. 220, 231 (2005); and *Cunningham v. California*, 549 U.S. 856, 864 (2007)." Answer (Doc. 21), Exh. "B" at 48–49 (citing *Almendarez-Torres v. United States*, 523 U.S. 224, 246 (1998)).   Petitioner opined that changes in the membership of the Supreme Court created the possibility that the *Almendarez-Torres* exception would be reversed. *Id.*, Exh. "B" at 49–51.

On March 29, 2017, the Arizona Court of Appeals affirmed Petitioner's convictions and sentences with correction.   *See State v. James*, 393 P.3d 467 (Ariz. Ct. App. 2017).   First, the appellate court considered the trial court's admission of other-act

- 7 -

1    evidence pursuant to Rule 404(c), Arizona Rules of Evidence.  *Id.* at 470–73.  As an

2    initial matter, the appellate court held that "Rule 404(c) requires a trial court to determine

3    by clear and convincing evidence, that the defendant committed the other act." *Id.* at 472.

4    The appellate court arrived at this conclusion after a careful review of the text of the rule,

5    the Arizona Supreme Court's construction of the rule, the purpose of the rule, and the

6    procedural provisions provided by the rule.  *Id.* at 471–73.

7        Next, the appellate court considered the necessity of an evidentiary hearing.  *Id.*, at

8    473–74.  The appellate court examined that Arizona Supreme Court's decision in *State v.*

9    *Aguilar*, 97 P.3d 865 (Ariz. 2004), as well as the appellate decision of *State v. LeBrun*,

10   213 P.3d 332 (Ariz. Ct. App. 2009).  *State v. James*, 393 P.3d 467, 473–74 (Ariz. Ct.

11   App. 2017).  After comparing the two cases and consideration of the facts of the instant

12   case, the appellate court determined that this case was more similar to *LeBrun* regarding

13   the necessity of an evidentiary hearing.  *Id.*  As such, the appellate court held that

14   "[g]iven the absence of a true factual dispute regarding the other acts, the trial court did

15   not abuse its discretion in finding the clear-and-convincing evidence standard satisfied,

16   even in the absence of a pretrial hearing with live witness testimony."  *Id.* at 474.

17   Additionally, the appellate court found that Petitioner's contention that the trial court's

18   denial of an evidentiary hearing "violated his rights to confrontation and due process, . . .

19   [was] waived on appeal due to his failure to develop a legal argument on these issues."

20   *Id.* at 471 n.4 (citing Ariz. R. Crim. P. 31.13(c)(1)(vi); then citing *State v. Moody*, 94 P.3d

21   1119, 1147 n.9 (Ariz. 2004)).

22       Third, the appellate court considered Petitioner's contention that the absence from

23   the appellate record of the documents relied on by the trial court constituted error which

24   entitles him to relief.  *Id.* at 474–75.  The appellate court observed that "[t]he proponent

25   of other-act evidence carries the burden of proving its admissibility in all respects." *State*

26   *v. James*, 393 P.3d 467, 474 (Ariz. Ct. App. 2017) (citations omitted).  The court went on

27   to note that "[f]or [appellate] review to occur, the materials on which a trial court based

28   its findings should be made part of the record."  *Id.*  The appellate court found that "[t]he

failure to include such items in a trial record therefore does not comport with Rule 404(c)." *Id.*  The appellate court also noted that "the defendant [has] a duty to object to any procedural irregularities he wishes to later raise on appeal." *Id.*  Petitioner, however, "objected only to the absence of witness testimony and cross-examination." *Id.*  The appellate court found that Petitioner's objections were without sufficient specificity, and "[b]ecause James did not properly raise the issue below when it could have been cured, he now carries the burden of showing any error was both fundamental and prejudicial in order to obtain appellate relief." *State v. James*, 393 P.3d 467, 474–75 (Ariz. Ct. App. 2017) (citing *State v. Henderson*, 115 P.3d 601, 607–08 (Ariz. 2005)).  The appellate court dismissed Petitioner's "novel contention that the proffered documents were 'secret' . . . find[ing] no support in the record, and his suggestion that the court might have relied on different documents than those disclosed is merely unfounded speculation." *Id.* at 475.  Because "the confrontation call and document showing [Petitioner's] felony conviction were admitted at trial," the appellate court held that the record before it adequately supported "the trial court's evidentiary ruling admitting the other-act evidence under Rule 404(c)" and affirmed.  *Id.*

Regarding Petitioner's argument that "the trial court failed to instruct the jury that the state was required to prove his touching was motivated by sexual interest[,]" the appellate court observed that "[o]ur supreme court recently rejected the contention that such motivation is an element of child molestation, stating instead that the absence of sexual motivation is an affirmative defense to be proven by a defendant." *Id.* (citing *State v. Holle*, 379 P.3d 197, 198 (Ariz. 2016)).  As such, the appellate court observed that it was "bound to follow this decision[,]" rejecting Petitioner's argument. *Id.* (citing *Francis v. Ariz. Dep't of Transp.*, 963 P.2d 1092, 1094 (Ariz. Ct. App. 1998)).

Finally, Petitioner "object[ed] to the trial court, rather than the jury, finding his prior conviction for the purpose of sentence enhancement." *State v. James*, 393 P.3d 467, 475 (Ariz. Ct. App. 2017).  The appellate court rejected Petitioner's argument and observed that it "cannot anticipate a prospective ruling of the United States Supreme

Court on this topic." *Id.* (citing *State v. Keith*, 122 P.3d 229, 230 (Ariz. Ct. App. 2005)).

On April 28, 2017, Petitioner filed a Petition for Review with the Arizona Supreme Court. *See* Answer (Doc. 21), Pet. for Review, *State v. James*, No. CR-17-0181-PR (Ariz. Apr. 28, 2017) (Exh. "E") (Doc. 21-1). Petitioner raised three issues for review, including whether 1) the court of appeals erred in upholding the trial court's decision to admit Rule 404(c) evidence following a refusal to hold an evidentiary hearing and reliance on material not contained in the record; 2) Petitioner's conviction should be reversed for structural error due to the trial court's alleged failure to instruct the jury that the State had the burden of proving Petitioner was motivated by sexual interest; and 3) Petitioner's Sixth Amendment right to a jury trial was violated when his prior conviction was determined by the court instead of a jury. *See id.*, Exh. "E." On June 14, 2017, the State filed its Cross-Petition for Review. *See* Answer (Doc. 21), State of Ariz. Cross-Pet. for Review, *State v. James*, No. CR-17-0181-PR (Ariz. June 14, 2017) (Exh. "G") (Doc. 21-1). The State framed its single issue for review as follows:

> Should this Court revisit and substantively address for the first time its prior pronouncement that a trial judge must preclude from the jury's consideration proffered Rule 404(c) other-act evidence if the judge is not personally convinced that the other act occurred, where that directive appears nowhere in the rules of evidence and directly conflicts with Rule 404(c)(1)(A)'s express directive that the trial court is to determine only whether the supporting evidence is legally sufficient to permit *the trier of fact* to find that the other act occurred?

Answer (Doc. 21), Exh. "G" at 200 (emphasis in original). On July 3, 2017, the State filed its response to Petitioner's Petition for Review. *See* Answer (Doc. 21), State of Ariz.'s Resp. to Pet. for Review, *State v. James*, No. CR-17-0181-PR (Ariz. July 3, 2017) (Exh. "F") (Doc. 21-1). On July 13, 2017, Petitioner filed his response to the State's cross-petition. *See* Answer (Doc. 21), Cross-Resp.'s Resp. to Cross-Pet. for Review, *State v. James*, No. CR-17-0181-PR (Ariz. July 13, 2017) (Exh. "G") (Doc. 21-1). On September 12, 2017, the Arizona Supreme Court denied both Petitioner's Petition for Review and the State's Cross-Petition. *See* Answer (Doc. 21), *State v. James*, No. CR-

17-0181-PR, Mem. Decision (Ariz. Sept. 12, 2017).

### C.   *Post-Conviction Relief Proceeding*

#### 1.   **PCR Petition**

On September 25, 2017, Petitioner filed his Notice of Post-Conviction Relief ("PCR").  Answer (Doc. 21), Petr.'s Not. of PCR, *State v. James*, No. CR-20141325-001 (Pima Cnty. Super. Ct. Sept. 25, 2017) (Exh. "J") (Doc. 21-1).  On November 20, 2018, Petitioner's PCR counsel filed a notice pursuant to *Montgomery v. Sheldon (I),*[5]  in which counsel stated that he had "reviewed the record and consulted with Defendant, but f[ound] no issues."[6]  Answer (Doc. 21), Petr.'s Not. of Complete PCR Review/Mot. for Ext. for Rule 32 at 230, *State v. James*, No. CR-20141325-001 (Pima Cnty. Super. Ct. Nov. 20, 2018) (Exh. "K") (Doc. 21-1).

On May 6, 2018, Petitioner filed a *pro se* Petition for Post-Conviction Relief. Answer (Doc. 21), Petr.'s Pet. for PCR, *State v. James*, No. CR-20141325-001 (Pima Cnty. Super. Ct. May 8, 2018) (Exh. "L1") (Doc. 21-2).   Petitioner raised nine (9) grounds for relief.[7]  *See id.*, Exh. "L1."  First, Petitioner asserted actual innocence.  *Id.*,

---

[5] *Montgomery v. Sheldon (I)*, 181 Ariz. 256, 889 P.2d 614 (1995).

[6] The Arizona Supreme Court has held that in Rule 32 proceedings, where counsel concludes that the proceeding has no merit, "a pleading defendant has a right under Ariz. Const. art. 2 § 24 to file a *pro se* PCR petition."  *Montgomery (I)*, 181 Ariz. at 260, 889 P.2d at 618. Subsequently, the Arizona Supreme Court affirmed this rule and reiterated:

> If, after conscientiously searching the record for error, appointed counsel in a PCR proceeding finds no tenable issue and cannot proceed, the defendant is entitled to file a pro se PCR.

*State v. Smith*, 184 Ariz. 456, 459, 910 P.2d 1, 4 (1996).

[7] Additionally, Petitioner alleged four (4) check-the-box claims on the PCR Petition form, including 1) "[t]he introduction at trial of evidence obtained by an unconstitutional search and seizure" and directing the reader to Issue Two; 2) "[t]he unconstitutional suppression of evidence by the state" and directing the reader to Issue Four; 3) "[t]he existence of newly discovered material which requires the court to vacate the conviction or sentence" and directing the reader to Issue One—Actual innocence, timeline evidence and Issue Three—Actual innocence, insufficient evidence, no physical evidence, no DNA, new timeline, and malicious false allegations; and 4) "[a]ny other ground within the scope of Rule 32, Arizona Rules of Criminal Procedure" and directing the reader to Issue Five—Jury tampering by Hells Angels, Issue Six— Ineffective assistance of counsel, Issue Seven—Double jeopardy, Issue Eight—Jury selection,

Exh. "L1" at 21–25.  Petitioner argued that "[t]here is clear and convincing evidence that Mr. James did not commit any crime in Pima County between the time period of Jan. 1, 2002 through Dec. 31, 2007."  *Id.*, Exh. "L1" at 22.  According to Petitioner, "[t]he State used a vague and non specific timeline because nobody could come up with an exact Date or Time prior to trial[,] [and] [t]he alleged victim TH narrowed down the timeline during trial to Sept 22, 2006 to Dec 31, 2007."  *Id.*, Exh. "L1" at 22.  Petitioner asserted that because his last contact with the victim was prior to July 17, 2006, "[i]t would be impossible for Mr. James to have done anything to TH . . . [and] [t]his is actual innocence evidence."  Answer (Doc. 21), Petr.'s Pet. for PCR at 22, *State v. James*, No. CR-20141325-001 (Pima Cnty. Super. Ct. May 8, 2018) (Exh. "L1") (Doc. 21-2).  Based upon the victim's trial testimony and his construction of a "timeline," Petitioner urged that he was demonstrably innocent and entitled to relief.  *Id.*, Exh. "LI" at 22–25.

Next, Petitioner argued that "[t]he confrontation call used at trial should have been suppressed before trial because it was not legally obtained and recorded and was not voluntarily given."  *Id.*, Exh. "L1" at 26.  Petitioner asserted that "TH agreed to participate in a confrontation call[,] [but] [s]he was a minor and can not [sic] sign or verbally consent to allow law enforcement to intercept her call."  *Id.*  The Petitioner further alleged that "[t]here is no written or verbal recording of TH or AH giving consent to intercept and record TH's call."  *Id*.  Petitioner speculated regarding the possibility of a *Brady*[8] violation because no record of a consent was provided to his counsel.  Answer (Doc. 21), Petr.'s Pet. for PCR at 26, *State v. James*, No. CR-20141325-001 (Pima Cnty. Super. Ct. May 8, 2018) (Exh. "L1") (Doc. 21-2).  Petitioner further asserted that his confession on the call was not voluntary.  *Id.* (citing A.R.S. § 13-3988(A)–(C)).  Petitioner also alleged, without more, that "[t]he confrontation call violated the U.S. Constitution, [F]irst [A]mendment, articles four, five and fourteen which guarentees [sic]

---

jury prejudice, misconduct, and Issue Nine—Jury selection unfair prejudice.  Answer (Doc. 21), Petr.'s Pet. for PCR at 8–9, *State v. James*, No. CR-20141325-001 (Pima Cnty. Super. Ct. May 6, 2018) (Exh. "L1") (Doc. 21-2).

[8] *Brady v. Maryland*, 373 U.S. 83 (1963).

1    freedom against unreasonable search and seizure, or shall be compelled to be a witness

2    against himself or be deprived of life, liberty or property without due process of law."[9]

3    Answer (Doc. 21), Exh. "L1" at 27.  Petitioner urged that the confrontation call caused

4    "unfair prejudice" and because it "was illegal[,] [it] should have been excluded from

5    trial." *Id.* (citing A.R.S. §§ 13-3010, 13-3012(9)).

6         Third, Petitioner alleged that "[t]here was not clear and convincing evidence of

7    any crime occurring at Sandario Road and Magee road in Pima County."  Answer (Doc.

8    21), Exh. "L1" at 28.  Petitioner based this allegation on the alleged lack of physical

9    evidence, DNA, witnesses, and exact time of the crime.  Answer (Doc. 21), Petr.'s Pet.

10   for PCR at 28–29, *State v. James*, No. CR-20141325-001 (Pima Cnty. Super. Ct. May 8,

11   2018) (Exh. "L1") (Doc. 21-2).  Petitioner construed "TH['s] testimony at trial []as he

12   said she said[,] [and opined that] [h]er testimony was malicious false allegations made as

13   an attempt of revenge against her grandfather because he abandoned her family and

14   moved with her grandmother to another state."  *Id.*, Exh. "L1" at 28, 31.  Petitioner

15   reiterated his opinion that "[t]he confrontation call was illegally made and recorded

16   without an ex parte order or any written or orally recorded document signed or any oral

17   statement giving law enforcement authority to intercept and record [Petitioner's] private

18   conversation."  *Id.*, Exh. "L1" at 29.  Petitioner also repeated his allegations that T.H.'s

19   trial testimony created a timeline of events that made it impossible for him to be the

20   perpetrator.  *Id.*  Petitioner alleged that A.H. "went to Mesa police on July 16, 2006 to file

21   a police report with malicious false allegations against [Petitioner]."  *Id.*  Petitioner then

22   declared that T.H.'s "testimony at trial was malicious false allegations."  Answer (Doc.

23   21), Petr.'s Pet. for PCR at 30, *State v. James*, No. CR-20141325-001 (Pima Cnty. Super.

24   Ct. May 8, 2018) (Exh. "L1") (Doc. 21-2).  Petitioner argued that T.H.'s trial testimony

25   was consistent with expert witness testimony regarding malicious false allegations.  *Id.*,

26   Exh. "L1" at 30–31.  Petitioner made passing reference to the United States Constitution,

27

28        [9] Throughout his PCR Petition, Petitioner cites only to the First Amendment of the U.S. Constitution.  The Court surmises that his intention in this instance was to cite to the Fourth and Fifth Amendments.  U.S. Const. amends. IV, V.

noting the "First amendment, article five says or shall be compelled in any criminal case to be a witness against himself, nor be deprived of life, liberty or property without due process of law[,] . . . article fourteen says nor shall any state deprive any person of life, liberty or property without due process of law."[10]  *Id.*, Exh. "L1" at 28. Petitioner urged that "[t]his case was all made up by AH and TH as an act of revenge" and no facts exist to support his conviction.  *Id.*, Exh. "L1" at 31.

Fourth, Petitioner alleged that "[t]here was prosecutorial misconduct when the prosecutor either willfully or inadvertantly [sic] suppressed 16 of the 20 exibits [sic] at trial."  *Id.*, Exh. "L1" at 32.  Petitioner complained that "[b]efore trial, [the] Prosecution submitted AOR 84 which was a complete list of 20 exibits [sic] to be submitted at trial[,] [but] [o]nly 4 exibits [sic] were submitted to the court for my jury to view during deliberations."  Answer (Doc. 21), Petr.'s Pet. for PCR at 32, *State v. James*, No. CR-20141325-001 (Pima Cnty. Super. Ct. May 8, 2018) (Exh. "L1") (Doc. 21-2).  Petitioner opined that "[t]he prosecution was under duty to submit all of the exibits [sic] to the court for the Jury to view even absent a request by Defense council [sic]."  *Id.*, Exh. "L1" at 32. Petitioner asserted that the prosecution "suppressed" a copy of an Apache Junction Police Report #90-3276, a copy of a Mesa Police Report #20061990521, a Mesa Police body diagram, forensic interview transcripts of A.H. and T.H. that took place in Mesa, and transcripts of investigators of the Pima County case.  *Id.*, Exh. "L1" at 32.  Petitioner urged that this was a due process violation, as well as a *Brady* violation.  *Id.*, Exh. "L1" at 32–34.  Petitioner further asserted that "[t]he suppressed evidence contained impeaching evidence to the State and the State's witnesses."  *Id.*, Exh. "L1" at 34.  Finally, Petitioner alleged that "[t]his evidence was suppressed either willfully or inadvertantly [sic] and as a result the ability of my Jury to view all the evidence against me was denied causing unfair prejudice against me."  Answer (Doc. 21), Petr.'s Pet. for PCR at 34, *State v. James*, No. CR-20141325-001 (Pima Cnty. Super. Ct. May 8, 2018) (Exh. "L1") (Doc.

---

[10] Throughout his PCR Petition, Petitioner cites only to the First Amendment of the U.S. Constitution.  The Court surmises that his intention in this instance was to cite to the Fifth Amendment.  U.S. Const. amend. V.

21-2).

Fifth, Petitioner asserted that T.H.'s father, grandfather, "and at least 30 other members of the Hells Angel motorcycle club attended all four days of [Petitioner's] trial and sentencing[,] . . . [and] were highly visible throughout the courthouse, elevators, hallways, common areas, parking garages and courtroom." *Id.*, Exh. "L1" at 35. Petitioner alleged that "[t]hey influenced my Jury by wearing their jackets to the courthouse and by verbally and nonverbally comunicating [sic] with members of my Jury[,] [and] [i]t is very possible that they talked directly or indirectly around my Jurors about my case." *Id.* Petitioner complained that the Hells Angels' members "wore jackets with large letters saying Bikers Against Sex Abuse on them" and opined that he was "positive these men tampered with my jury." *Id.* Petitioner indicated that his "wife, father, stepmother and [him]self felt threatened by them." *Id.* Petitioner "fe[lt] they could have intimidated and influenced the Jurors by their presence and talking to them when others weren't looking." Answer (Doc. 21), Petr.'s Pet. for PCR at 36, *State v. James*, No. CR-20141325-001 (Pima Cnty. Super. Ct. May 8, 2018) (Exh. "L1") (Doc. 21-2). Petitioner relied on Arizona state law prohibiting jury tampering and his "right to a speedy and public trial, by an impartial jury" under the United States Constitution in making his arguments. *Id.*, Exh. "L1" at 35 (citing A.R.S. 13-2807; then citing U.S. Const.[11]).

Sixth, Petitioner asserted that he received ineffective assistance of counsel because his lawyer "did not call any witnesses for [Petitioner's] defence [sic] at trial." *Id.*, Exh. "L1" at 37. Petitioner asserted that "[t]here were many people [his counsel] could have called who would have given testimony[,] . . . [and] would have shown that AH and TH were making malicious false allegations." *Id.* Petitioner stated this failure violated his Sixth Amendment right to assistance of counsel.[12] *Id.*

---

[11] Throughout his PCR Petition, Petitioner cites only to the First Amendment of the U.S. Constitution. The Court surmises that his intention in this instance was to cite to the Sixth Amendment right to jury trial language. U.S. Const. amend. VI.

[12] Throughout his PCR Petition, Petitioner cites only to the First Amendment of the U.S.

1      Seventh, Petitioner asserted that he was "charged twice for the same crime[,]" in

2 violation of Double Jeopardy.[13]   Answer (Doc. 21), Petr.'s Pet. for PCR at 38, *State v.*

3 *James*, No. CR-20141325-001 (Pima Cnty. Super. Ct. May 8, 2018) (Exh. "L1") (Doc.

4 21-2).  Petitioner claimed that his "crime allegedly happened one time near Sandario road

5 and Magee road in Pima County[,] [and] [t]here was only one crime allegedly committed

6 but [he] was charged with Two [sic] crimes."  *Id.*, Exh. "L1" at 38.  Petitioner argued that

7 one "could very easily substitute oral sexual contact into either charge[,]" and "count one

8 does not specify what I touched a vulva with."  *Id.*, Exh. "L1" at 39.  Petitioner claimed

9 that this interpretation demonstrated that he was charged twice for the same crime.  *Id.*

10      Eighth, Petitioner alleged that "Juror #6 . . . [his] Jury foreman intentionally

11 minimized his previous employment by the Pima County Sherrifs [sic] dept as a booking

12 supervisor at the Pima County Jail."  Answer (Doc. 21), Exh. "L1" at 40.  Petitioner

13 asserted that Juror #6 stated that he was a fifth grade teacher during voir dire.  Answer

14 (Doc. 21), Petr.'s Pet. for PCR at 40, *State v. James*, No. CR-20141325-001 (Pima Cnty.

15 Super. Ct. May 8, 2018) (Exh. "L1") (Doc. 21-2).  Petitioner opined that Juror #6 "should

16 not have been allowed on [his] jury[,] [because] [h]e had worked for the same law

17 enforcement agency that had investigated and brought charges against [Petitioner]."  *Id.*

18 Petitioner further opined that Juror #6 "would have an unconsious [sic] prejudice against

19 sex offenders and other inmates because he helped process every inmate at the Pima

20 County Jail."  *Id.*  Petitioner argued that he had been denied the right to an impartial

21 jury.[14]  *Id.*

22      Finally, Petitioner asserted that his "Jury had five school teachers and one school

23

24 Constitution.  The Court surmises that his intention in this instance was to cite to the Sixth
Amendment right to counsel language.  U.S. Const. amend. VI.

25    [13] Throughout his PCR Petition, Petitioner cites only to the First Amendment of the U.S.

26 Constitution.  The Court surmises that his intention in this instance was to cite to the Fifth
Amendment double jeopardy clause.  U.S. Const. amend. V.

27    [14] Throughout his PCR Petition, Petitioner cites only to the First Amendment of the U.S.

28 Constitution.  The Court surmises that his intention in this instance was to cite to the Sixth
Amendment right to an impartial jury.  U.S. Const. amend. VI.

maintenance worker[,] [which] mean[t] half of [his] Jury was made up of people who had daily contact with children."  Answer (Doc. 21), Exh. "L1" at 41.  Petitioner argued that this "violated [his] right to an impartial Jury[,] . . . [because] [he] d[id] not believe that any school teacher would be impartial to a previously convicted registered sex offender who was being accused of a second offense against his previous victims [sic] daughter who was a preteen girl."[15]  Answer (Doc. 21), Petr.'s Pet. for PCR at 41, *State v. James*, No. CR-20141325-001 (Pima Cnty. Super. Ct. May 8, 2018) (Exh. "L1") (Doc. 21-2).  Petitioner further speculated that "[s]chool teachers would have preexisting prejudices against anyone who they thought would harm any child."  *Id.*

## 2.  Rule 32 Court Order

On November 19, 2019, the Rule 32 court issued its order summarily dismissing Petitioner's *pro se* Petition for Post-Conviction Relief and denying his ineffective assistance of counsel claim.  Answer (Doc. 21), *State v. James*, No. CR20141325-001, Ruling—In Chambers Ruling Re: Pet. for PCR (Pima Cnty. Super. Ct. Nov. 19, 2019) (Exh. "O") (Doc. 21-5).  The Rule 32 court reviewed Rule 32.2, Arizona Rules of Criminal Procedure, and outlined when relief was precluded, as well as the exceptions thereto.  *Id.*, Exh. "O" at 156.  The Rule 32 court found that "Issues 2, 3, 4, 5, 7, 8, and 9 of Defendant's petition [we]re all matters that could have been raised on direct appeal but were not and [we]re therefore precluded."  *Id.*, Exh. "O" at 156–57.  The Court further found that "none of those claims [we]re among the exceptions listed in Rule 32.2(b), Ariz. R. Crim. P."  *Id.*, Exh. "O" at 157.

Next, the Rule 32 court considered Defendant's actual innocence claim, as well as his assertion that the "narrow[ed] . . . time frame that the charged conduct occurred [] constitute[d] newly discovered evidence."  *Id.*, Exh. "O" at 157–58.  The court observed that "[w]hile the exact day these events occurred is unclear, the indictment and the victim's testimony established the period of time the victim believed it happened."

---

[15] Throughout his PCR Petition, Petitioner cites only to the First Amendment of the U.S. Constitution.  The Court surmises that his intention in this instance was to cite to the Sixth Amendment right to an impartial jury.  U.S. Const. amend VI.

Answer (Doc. 21), *State v. James*, No. CR20141325-001, Ruling—In Chambers Ruling Re: Pet. for PCR at 157 (Pima Cnty. Super. Ct. Nov. 19, 2019) (Exh. "O") (Doc. 21-5). The Rule 32 court also noted that "[t]he timeline provided by the Defendant does not account for all relevant periods of time[,] [n]or does the combined testimony set forth by the defendant in his petition of T.H. and A.H. together with the Defendant's statement of pertinent facts establish by clear and convincing evidence that the facts underlying the claim would be sufficient to establish that no reasonable fact-finder would find the defendant guilty beyond a reasonable doubt." *Id.* The court described "[t]he evidence produced at trial of the Defendant's guilt []as compelling and overwhelming." *Id.* The court briefly reiterated the evidence presented at trial and found that "[i]n light of such compelling evidence, the Defendant ha[d] failed to establish by clear and convincing evidence that no reasonable fact-finder would find him guilty beyond a reasonable doubt." *Id.* The Rule 32 court also held that "[t]he testimony of T.H. at trial [wa]s not newly discovered evidence[,] [because] [t]his evidence was produced at trial with the Defendant present. *Id.*, Exh. "O" at 158.

Finally, the Rule 32 court considered Petitioner's claim of ineffective assistance of counsel under the Sixth Amendment of the United States Constitution, as well as the Arizona Constitution. Answer (Doc. 21), *State v. James*, No. CR20141325-001, Ruling—In Chambers Ruling Re: Pet. for PCR at 158 (Pima Cnty. Super. Ct. Nov. 19, 2019) (Exh. "O") (Doc. 21-5) (citing *State v. Nash*, 694 P.2d 222, 227 (Ariz. 1985)). The court described Petitioner's burden as "proving, by a preponderance of the evidence, both that (1) his counsel's performance was deficient and (2) the deficient performance prejudiced his defense." *Id.*, Exh. "O" at 158 (citing *State v. Walton*, 769 P.2d 1017, 1037–38 (Ariz. 1989)). The Rule 32 court observed that Petitioner "provide[d] a list of people who he claim[ed] could have and would have testified on his behalf at trial[,] . . . [as well as] letters from family members that he claim[ed] would have disputed the claims made by the State's witnesses." Answer (Doc. 21), Exh. "O" at 159. The court further observed that Petitioner "provide[d] statements from five out of the twelve people

he listed in his petition but d[id] not provide any information on what the other possible witnesses would have testified to." *Id.* The Rule 32 court described "the information that the Defendant provide[d] [a]s irrelevant, speculative, hearsay, cumulative or improper character evidence about T.H., A.H. or A.H.'s husband[.]" *Id.* Because Petitioner "d[id] not show how any of the people he listed as potential witnesses had direct, relevant knowledge of the charged incidents or other act evidence[,] . . . [he] fail[ed] to show how their testimony would have had a 'reasonable probability' of changing the outcome of trial or how he was prejudiced by failure of trial counsel to attempt to introduce irrelevant and inadmissible evidence." Answer (Doc. 21), *State v. James*, No. CR20141325-001, Ruling—In Chambers Ruling Re: Pet. for PCR at 159 (Pima Cnty. Super. Ct. Nov. 19, 2019) (Exh. "O") (Doc. 21-5). As such, the Rule 32 court held that Petitioner "fail[ed] to meet either prong of the Strickland test, [and] his claim of Ineffective Assistance of Counsel [wa]s without merit." *Id.*

### 3.  Rule 32 Court Reconsideration

On December 6, 2019, Petitioner filed a Notice of Filing Motion for Reconsideration. Answer (Doc. 21), Petr.'s Not. of Filing Mot. for Recon., *State v. James*, No. CR20141325-001 (Pima Cnty. Super. Ct. Dec. 6, 2019) (Exh. "P") (Doc. 21-5). On December 18, 2019, he followed this motion with additional supporting documents. Answer (Doc. 21), Petr.'s Not. of Filing Mot. for Recon. Add'l Supporting Docs., *State v. James*, No. CR20141325-001 (Pima Cnty. Super. Ct. Dec. 18, 2019) (Exh. "Q") (Doc. 21-6). On December 19, 2019, the Rule 32 court acknowledged receipt of Petitioner's motion and supplement, and denied reconsideration upon review. Answer (Doc. 21), *State v. James*, No. CR20141325-001, Order—In Chambers Re: Def.'s Mot. for Recon. (Pima Cnty. Super. Ct. Dec. 19, 2019) (Exh. "R") (Doc. 21-6).

### 4.  PCR Appeal

On February 28, 2020, Petitioner sought review of the Rule 32 court's order. Answer (Doc. 21), Petr.'s Not. of Filing Pet. for Review for Denial of Pet. for PCR *pro se*, *State v. James*, No. 2 CA-CR 2020-0044-PR (Ariz. Ct. App. Feb. 28, 2020) (Exh.

"S") (Doc. 21-6).  Petitioner presented nine (9) claims for relief, including whether the Rule 32 court erred by precluding 1) Petitioner's actual innocence claim; 2) the motion to suppress the confrontation call; 3) Petitioner's sufficiency of the evidence claim; 4) the issues of prosecutorial misconduct, ineffective assistance of counsel, and the Prosecutor allegedly withholding 16 of 20 exhibits from the jury; 5) the issue of jury tampering by the Hells Angels; 6) Petitioner's claim of ineffective assistance of counsel regarding witnesses; 7) Petitioner's double jeopardy claim; 8) Petitioner's issue regarding the jury foreperson being an educator and former Pima County Sheriff's Department employee; and 9) Petitioner's issue regarding school teachers on the jury.  *Id.*, Exh. "S" at 36-60. Petitioner also asserted that "[t]he trial court did not apply the correct standard of review." *Id.*, Exh. "S" at 37.

Regarding his actual innocence claim, Petitioner reiterated the argument in his PCR petition that TH's testimony "narrowed" the timeline.  *Id.*, Exh. "S" at 38. Petitioner argued that he "d[id] not have to account for all relevent [sic] periods of time because TH established this shorter timeline[,] [and] [a]ny time prior to Sept 22, 2006 is irrelevent [sic] and no longer in the timeline."  *Id.*, Exh. "S" at 39.  Petitioner urged that "it [wa]s impossible for TH and the Defendant to have any contact between Sept 22, 2006 through Dec 31, 2007 when last contact was July 16, 2006."  Answer (Doc. 21), Petr.'s Not. of Filing Pet. for Review for Denial of Pet. for PCR *pro se* at 39, *State v. James*, No. 2 CA-CR 2020-0044-PR (Ariz. Ct. App. Feb. 28, 2020) (Exh. "S") (Doc. 21-6). Petitioner urged that "[t]he court erred by refusing to recognize this Actual Innocence . . . [and] by denying this issue[.]"  *Id.*

Next, Petitioner addressed his claim regarding the confrontation call.  Answer (Doc. 21), Exh. "S" at 40.  Petitioner acknowledged that a motion to suppress was filed pretrial, to which the Prosecution responded.  *Id.*  Petitioner asserted that "[t]he Prosecutor submited [sic] incorrect facts by stating the call was voluntary and because ARS 13-3012(9) one party had given consent."  Answer (Doc. 21), Exh. "S" at 40.  The trial court denied Defendant's motion.  Answer (Doc. 21), Petr.'s Not. of Filing Pet. for

Review for Denial of Pet. for PCR *pro se* at 40, *State v. James*, No. 2 CA-CR 2020-0044-PR (Ariz. Ct. App. Feb. 28, 2020) (Exh. "S") (Doc. 21-6).   Petitioner reiterated his argument from his PCR petition that "[t]he call should have been suppressed at pretrial because it violated A.R.S. 13-3988(A)(B)(C) because it was not voluntary or voluntarily given."   Answer (Doc. 21), Exh. "S" at 40 (citing A.R.S. § 13-3988(A)).   Petitioner asserted that he "was under detention during a non-custodial interrogation conducted by TH who worked as a[n] agent of the State with two Pima County Detectives sitting next to her coaching and crafting questions for her to use to interrogate the Defendant so they could intercept and record his conversation."   *Id.*, Exh. "S" at 41.   Petitioner urged that "[t]hese are 'colorable claims' that show that the state and law enforcement violated three ARS laws while intercepting and recording the confrontation call[,] . . . mak[ing] the confrontation call illegal and illegally obtained."   *Id.*   Petitioner also alleged that defense counsel provided ineffective assistance "because he failed to properly prepare for rebuttal and file a rebuttal to the Prosecutor to argue why the call was illegal and not voluntary."   Answer (Doc. 21), Exh. "S" at 42.   In Petitioner's opinion, defense counsel "failed to read and understand ARS 13-3988(A)(B)(C), ARS 13-3012(9), and ARS 13-3010."   Answer (Doc. 21), Petr.'s Not. of Filing Pet. for Review for Denial of Pet. for PCR *pro se* at 42, *State v. James*, No. 2 CA-CR 2020-0044-PR (Ariz. Ct. App. Feb. 28, 2020) (Exh. "S") (Doc. 21-6).   Petitioner further alleged that appellate counsel provided ineffective assistance for failing to raise this issue on appeal.   *Id.*

Third, Petitioner asserted that the Rule 32 court "erred in precluding the issues of Actual Innocence, the fundamental error of no evidence to support a conviction in Pima county, malicious false allegations and IAC."   Answer (Doc. 21), Exh. "S" at 43.   Petitioner reiterated the arguments of his first two claims.   *Id.*, Exh. "S" at 43–44, 46.   Petitioner went on to allege that the trial testimony of A.H. and T.H. were "malicious false allegations."   *Id.*, Exh. "S" at 44, 46.   Petitioner opined that their testimony was retaliatory and a result of a familial dispute.   Answer (Doc. 21), Petr.'s Not. of Filing Pet. for Review for Denial of Pet. for PCR *pro se* at 44–45, *State v. James*, No. 2 CA-CR

2020-0044-PR (Ariz. Ct. App. Feb. 28, 2020) (Exh. "S") (Doc. 21-6).  Petitioner argued that the prosecution "had no date, no forensic or physical evidence of any kind[;] [a]ll [it] had were malicious false allegations of a crime that never happened."  *Id.*, Exh. "S" at 45. Petitioner further alleged that defense counsel was ineffective "because he failed to properly investigate prepare, recognize and dispute the fact that there was no evidence of any kind that proved the Defendant had comitted [sic] any crime in Pima County."  *Id.*, Exh. "S" at 46.

Fourth, Petitioner argued that the trial court "erred in precluding the issue of prosecutorial misconduct, IAC and 'colorable claims' that the prosecutor withheld 16 of 20 exhibits from the Jury by using Rule 32.2(1)."  *Id.*, Exh. "S" at 47.  Petitioner asserted that "[t]he Prosecutor comited [sic] prosecutorial misconduct by willfully, recklessly and negligently failing to submit 16 of 20 exhibits at trial."  *Id.*  Petitioner opined that "[s]he was under duty to submit all of the exhibits which were in an envelope at trial."  *Id.* Petitioner also complained that "[t]he Prosecutor, AH and TH based the majority of their testimony on alleged 'other acts' in Apache Jct in 1991 and a Mesa PD investigation in 2006 in which no charges were filed."  Answer (Doc. 21), Petr.'s Not. of Filing Pet. for Review for Denial of Pet. for PCR *pro se* at 47, *State v. James*, No. 2 CA-CR 2020-0044-PR (Ariz. Ct. App. Feb. 28, 2020) (Exh. "S") (Doc. 21-6).  Petitioner alleged that "[t]he trial testimony greatly differed from the actual depositions given in the suppressed documents."  *Id.*  Petitioner urged that "[t]he court erred in precluding this issue because it shows prosecutorial misconduct and meets the *Brady* rule three prong test."  *Id.* Petitioner also alleged that defense counsel was ineffective "because he failed to verify and [sic] that the prosecutor had submitted all of the documents for the jury to view during deliberations."  Answer (Doc. 21), Exh. "S" at 47–48.

Fifth, Petitioner asserted that the trial court "erred in precluding the issue of jury tampering by the use of Bikers against child abuse (BACA) jackets using rule 32.2(1)." *Id.*, Exh. "S" at 48.  Petitioner argued that "[t]he Hells Angels Motorcycle Club used intimidation, verbal and nonverbal comunication [sic] with the jury by attending all four

days of trial wearing BACA jackets in and around the courthouse and in the courtroom." Answer (Doc. 21), Petr.'s Not. of Filing Pet. for Review for Denial of Pet. for PCR *pro se* at 48, *State v. James*, No. 2 CA-CR 2020-0044-PR (Ariz. Ct. App. Feb. 28, 2020) (Exh. "S") (Doc. 21-6).  Petitioner opined that this was jury tampering in violation of his due process rights and prohibited him from receiving a fair trial.  *Id.*, Exh. "S" at 48–49. Petitioner also asserted that defense counsel was ineffective because he "saw these men wearing BACA jackets and he should have known as a lawyer that they were jury tampering." *Id.*, Exh. "S" at 49.

Sixth, Petitioner alleged that "the court erred in precluding the issue of IAC because the trial defense counsel failed to call, interview, question or prepare any witnesses and the Defendant to testify at trial using Rule 32.2(1)."  Answer (Doc. 21), Exh. "S" at 49.  Petitioner complained that "[t]rial defense counsel failed to call any witnesses for the Defendant's defense[,] . . . [even though] there were 12 people listed who could have testified." *Id.*  Petitioner alleged that his proposed witnesses would "all testify of the high conflict dispute between the two familys [sic][,] . . . [and] AH['s] plans of revenge and their desire to damage the Defendant's reputation and credibility with threats and malicious false allegations."  Answer (Doc. 21), Petr.'s Not. of Filing Pet. for Review for Denial of Pet. for PCR *pro se* at 50, *State v. James*, No. 2 CA-CR 2020-0044-PR (Ariz. Ct. App. Feb. 28, 2020) (Exh. "S") (Doc. 21-6).  Petitioner opined that his proposed witnesses "would have been excellent witnesses and their testimony would have changed the verdict."  *Id.*, Exh. "S" at 51.  Petitioner further urged that defense counsel "failed to prepare the Defendant to be a witness on his own behalf."  *Id.*, Exh. "S" at 50.

Seventh, Petitioner alleged that "the court erred in precluding the issue of Double Jeopardy using rule 32.2(1)."  *Id.*, Exh. "S" at 51.  Petitioner argued that "the two charges [against him] [we]re duplicious [sic]."  *Id.* (citing *State v. Ortega*, 220 Ariz. 320 (Ct. App. 2008)).  Petitioner also asserted that both trial and appellate counsels were ineffective for allegedly "fail[ing] to properly investigate the ARS and prior court cases

to find that by definition both charges are duplicious [sic] and are Double Jeopardy." Answer (Doc. 21), Exh. "S" at 52. Petitioner argued that the proper "[r]emedy [wa]s the lesser charge and sentence of molestation should be vacated and the major charge and sentence of sexual conduct should be affirmed." Answer (Doc. 21), Petr.'s Not. of Filing Pet. for Review for Denial of Pet. for PCR *pro se* at 52, *State v. James*, No. 2 CA-CR 2020-0044-PR (Ariz. Ct. App. Feb. 28, 2020) (Exh. "S") (Doc. 21-6).

Eighth, Petitioner asserted that "the court erred in precluding the issue of allowing the jury foreman to be a former Pima County Sherrif [sic] booking supervisor and a current six[th] grade school teacher." *Id.* Petitioner opined that "[b]oth occupations [sic] ma[de] him a[n] 'interested person' who should have been disqualified from not only serving on the Jury but he should not been [sic] elected as the Jury forman [sic] under A.R.S. 21-211." Answer (Doc. 21), Exh. "S" at 52. Petitioner urged that "any person 'interested directly, or indirectly[,] in a matter is disqualified from serving for that case.'" *Id.* (quoting *State v. Eddington*, 266 P.3d 1057 (Ariz. 2011)). Petitioner asserted that the jury foreperson "had a[n] interest in the case even if he had sworn during voir dire that he could be fair and impartial." Answer (Doc. 21), Exh. "S" at 53. Petitioner argued that the trial court's error violated his due process rights. Answer (Doc. 21), Petr.'s Not. of Filing Pet. for Review for Denial of Pet. for PCR *pro se* at 54, *State v. James*, No. 2 CA-CR 2020-0044-PR (Ariz. Ct. App. Feb. 28, 2020) (Exh. "S") (Doc. 21-6). Petitioner further alleged that trial counsel was ineffective "because he did not properly prepare for jury selection." *Id.* Petitioner also opined that appellate counsel was ineffective "because he failed to submit this issue on appeal even though the Defendant pointed this out to him." *Id.*

Finally, Petitioner asserted that "the court erred in precluding the issue of allowing the jury to be made up of six 'interested person' school teachers." *Id.* Petitioner argued that the six educators "[we]re 'interested persons' who should have been disqualified from jury service[.]" *Id.*, Exh. "S" at 55 (citing A.R.S. § 21-211; then citing Ariz. R. Crim. P. 18.4(8); then citing *State v. Eddington*, 266 P.3d 1057 (Ariz. 2011)). Petitioner

opined that "[s]chool teachers are interested directly or indirectly in this matter because of their close contact with children . . . [and] might hesitate to join a defense verdict in a child sex case."  Answer (Doc. 21), Petr.'s Not. of Filing Pet. for Review for Denial of Pet. for PCR *pro se* at 55, *State v. James*, No. 2 CA-CR 2020-0044-PR (Ariz. Ct. App. Feb. 28, 2020) (Exh. "S") (Doc. 21-6).  Petitioner also alleged that trial counsel was ineffective "because he did not properly prepare for the Jury selection." *Id.*, Exh. "S" at 56.  Petitioner further alleged that appellate counsel was ineffective "because he failed to submit this issue on appeal even though the Defendant pointed this out to him." *Id.*

On June 23, 2020, the Arizona Court of Appeals issued its memorandum decision granting review, but denying relief.  Answer (Doc. 21), *State v. James*, No. 2 CA-CR 2020-0044-PR, Mem. Decision (Ariz. Ct. App. June 23, 2020) (Exh. "T") (Doc. 21-6). The appellate court observed that "[t]he trial court summarily dismissed [Petitioner's PCR] petition[,] [and] . . . found James's claims of trial error were precluded because they could have been raised on direct appeal, that his claim of actual innocence failed in light of the victim's testimony and his admission during the confrontation call, and that James had demonstrated neither that the proposed witnesses had direct, relevant knowledge of the charged incidents or other act evidence nor a reasonable probability their testimony would have changed the outcome of his trial." *Id.*, Exh. "T" at 70–71 (internal quotations and citations omitted).  The appellate court further observed that "[a]lthough [Petitioner] complain[ed] the trial court erred in finding his claims of trial error precluded, he d[id] not address the court's basis for that conclusion: that he could have raised the claims on appeal."  *Id.*, Exh. "T" at 71 (citing Ariz. R. Crim. P. 32.2(a)(3)).  The court explained that Petitioner "assert[ed], for the first time, that his trial and appellate counsel were ineffective in failing to raise these issues."  Answer (Doc. 21), Exh. "T" at 71.  As such, the appellate court declined to "consider [these] issues raised for the first time on review." *Id.*, Exh. "T" at 71 (citing Ariz. R. Crim. P. 32.16(c)(2)(B); then citing *State v. Ramirez*, 126 Ariz. 468 (Ariz. Ct. App. 1980)).  The appellate court also noted that although "James also complain[ed] that the trial court erred in finding

precluded his claims of ineffective assistance and actual innocence[;] [t]he court did not find those claims precluded but instead rejected them on their merits."  Answer (Doc. 21), *State v. James*, No. 2 CA-CR 2020-0044-PR, Mem. Decision at 71 n.2 (Ariz. Ct. App. June 23, 2020) (Exh. "T") (Doc. 21-6).  "As to James's remaining claims – actual innocence and ineffective assistance of trial counsel for failing to call defense witnesses – [the appellate court held that] the trial court correctly resolved those claims on their merits[,] [and] [b]ecause that analysis [wa]s thorough ad well-reasoned, [the appellate court] adopt[ed] it."  *Id.*, Exh. "T" at 71 (citing *State v. Whipple*, 177 Ariz. 272, 274 (Ariz. Ct. App. 1993)).  The appellate court further held that "[a]lthough James at times identifies one of his claims as a claim of actual innocence under Rule 32.1(h), which is not subject to preclusion, . . . the claim is framed as a challenge to the sufficiency of the evidence – a claim James could have raised on appeal and, as the trial court correctly concluded, is therefore precluded."  Answer (Doc. 21), Exh. "T" at 71 n.3 (citing Ariz. R. Crim. P. 32.2(a)(3) & (b)).

### 5.  PCR Appeal Reconsideration

On July 7, 2020, Petitioner sought reconsideration of the appellate court's order.  Answer (Doc. 21), Petr.'s Not. of Filing Request to Recon. Pet. for Review for Denial of Pet. for PCR *pro se*, *State v. James*, No. 2 CA-CR 2020-0044-PR (Ariz. Ct. App. July 7, 2020) (Exh. "U") (Doc. 21-6).  The following day, the appellate court denied Petitioner's motion for reconsideration.  Answer (Doc. 21), *State v. James*, No. 2 CA-CR 2020-0044-PR, Order (Ariz. Ct. App. July 8, 2020) (Exh. "V") (Doc. 21-6).

### 6.  PCR Petition for Review

On August 6, 2020, Petitioner sought review by the Arizona Supreme Court of his PCR petition.  Answer (Doc. 21), Petr.'s Not. of Filing Pet. for Review *pro se* on Behalf of Client, *State v. James*, No. 2 CR-20-0249-PR (Ariz. Aug. 6, 2020) (Exh. "W") (Doc. 21-6).  Petitioner presented four (4) issues for review, including 1) "[a]ctual innocence by the use of timeline evidence"; 2) "[j]ury tampering by the use of Bikers Against Child Abuse Jackets"; 3) "Double Jeopardy by the use of duplicious [sic] charges"; and 4)

"[t]he court allowed 'interested persons' to serve on the Jury." *Id.*, Exh. "W" at 85.  On November 13, 2020, the Arizona State Supreme Court denied Petitioner's Petition for Review.  Answer (Doc. 21), *State v. James*, No. 2 CR-20-0249-PR, Memorandum (Ariz. Nov. 13, 2020) (Exh. "X") (Doc. 21-6).

### D.      The Instant Habeas Proceeding

On February 26, 2021, Petitioner filed his Petition for a Writ of Habeas Corpus (Doc. 1).   Upon direction by the Court, on March 29, 2021, Petitioner filed his Petition Under 28 U.S.C. § 2254 for a Writ of Habeas Corpus by a Person in State Custody (Non-Death Penalty) (Doc. 6) ("Amended Petition"), which is currently pending before the Court.  Petitioner asserts five (5) grounds for relief, including 1) "Actual innocence by the use of timeline evidence"; 2) "[j]ury tampering by a group of Hells Angels" in violation of his due process rights and ineffective assistance of counsel for ignoring the individuals; 3) "[t]he court erred by denying the motion to suppress the confrontation call" and ineffective assistance of counsel for allegedly failing to prepare to rebut reasons why the call was admissible; 4) "[t]he court allowed 'interested persons' to serve on the jury" in violation of his due process rights and ineffective assistance of counsel for an alleged failure to recognize and raise the issue prior to trial or during voir dire; and 5) duplicitous charges in violation of his Double Jeopardy rights.  *See* Amended Petition (Doc. 6).

On August 2, 2021, Respondents filed their Limited Answer to Petition for Writ of Habeas Corpus (Doc. 21) and Petitioner replied (Doc. 24).

## II.      STANDARD OF REVIEW

### A.      In General

The federal courts shall "entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody *in violation of the Constitution or laws of treaties of the United*

*States*." 28 U.S.C. § 2254(a) (emphasis added).  Moreover, a petition for habeas corpus by a person in state custody:

> shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim – (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); *see also Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).  Correcting errors of state law is not the province of federal habeas corpus relief.  *Estelle v. McGuire*, 502 U.S. 62, 67 (1991).  Ultimately, "[t]he statute's design is to 'further the principles of comity, finality, and federalism.'"  *Panetti v. Quarterman*, 551 U.S. 930, 945 (2007) (quoting *Miller-El v. Cockrell*, 537 U.S. 322, 337 (2003)).  Furthermore, this standard is difficult to meet and highly deferential "for evaluating state-court rulings, [and] . . . demands that state-court decisions be given the benefit of the doubt."  *Pinholster*, 563 U.S. at 181 (citations and internal quotation marks omitted).

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 110 Stat. 1214, mandates the standards for federal habeas review.  *See* 28 U.S.C. § 2254.  The "AEDPA erects a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court."  *Burt v. Titlow*, 571 U.S. 12, 19 (2013).  Federal courts reviewing a petition for habeas corpus must "presume the correctness of state courts' factual findings unless applicants rebut this presumption with 'clear and convincing evidence.'"  *Schriro v. Landrigan*, 550 U.S. 465, 473–74 (2007) (citing 28 U.S.C. § 2254(e)(1)).  Moreover, on habeas review, the federal courts must consider whether the state court's determination was unreasonable, not merely incorrect.  *Id.*, 550 U.S. at 473; *Gulbrandson v. Ryan*, 738 F.3d 976, 987 (9th Cir. 2013).  Such a determination is unreasonable where a state court properly identifies the governing legal principles delineated by the Supreme Court, but when the court applies the principles to the facts before it, arrives at a different result.  *See Harrington v. Richter*, 562 U.S. 86,

(2011); *Williams v. Taylor*, 529 U.S. 362 (2000); *see also Casey v. Moore*, 386 F.3d 896, 905 (9th Cir. 2004). "AEDPA requires 'a state prisoner [to] show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error . . . beyond any possibility for fairminded disagreement.'" *Burt*, 134 S. Ct. at 10 (quoting *Harrington*, 562 U.S. at 103) (alterations in original).

## B.    Exhaustion of State Remedies

Prior to application for a writ of habeas corpus, a person in state custody must exhaust all of the remedies available in the State courts. 28 U.S.C. § 2254(b)(1)(A). This "provides a simple and clear instruction to potential litigants: before you bring any claims to federal court, be sure that you first have taken each one to state court." *Rose v. Lundy*, 455 U.S. 509, 520 (1982). As such, the exhaustion doctrine gives the State "the opportunity to pass upon and correct alleged violations of its prisoners' federal rights." *Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (internal quotations omitted). Moreover, "[t]he exhaustion doctrine is principally designed to protect the state courts' role in the enforcement of federal law and prevent disruption of state judicial proceedings." *Rose*, 455 U.S. at 518 (internal citations omitted). This upholds the doctrine of comity which "teaches that one court should defer action on causes properly within its jurisdiction until the courts of another sovereignty with concurrent powers, and already cognizant of the litigation, have had an opportunity to pass upon the matter." *Id.* (quoting *Darr v. Burford*, 339 U.S. 200, 204 (1950)).

Section 2254(c) provides that claims "shall not be deemed . . . exhausted" so long as the applicant "has the right under the law of the State to raise, by any available procedure, the question presented." 28 U.S.C. § 2254(c). "[O]nce the federal claim has been fairly presented to the state courts, the exhaustion requirement is satisfied." *Picard v. Connor*, 404 U.S. 270, 275 (1971). The fair presentation requirement mandates that a state prisoner must alert the state court "to the presence of a federal claim" in his petition, simply labeling a claim "federal" or expecting the state court to read beyond the four corners of the petition is insufficient. *Baldwin v. Reese*, 541 U.S. 27, 31–33 (2004)

(rejecting petitioner's assertion that his claim had been "fairly presented" because his brief in the state appeals court did not indicate that "he was complaining about a violation of federal law" and finding the justices' opportunity to read a lower court decision addressing the federal claims insufficient to support fair presentation); *Hiivala v. Wood*, 195 F.3d 1098 (9th Cir. 1999) (holding that petitioner failed to exhaust federal due process issue in state court because petitioner presented claim in state court only on state grounds).  Furthermore, in order to "fairly present" one's claims, the prisoner must do so "in each appropriate state court."  *Baldwin*, 541 U.S. at 29.  "Generally, a petitioner satisfies the exhaustion requirement if he properly pursues a claim (1) throughout the entire direct appellate process of the state, or (2) throughout one entire judicial postconviction process available in the state."  *Casey v. Moore*, 386 F.3d 896, 916 (9th Cir. 2004) (quoting Liebman & Hertz, *Federal Habeas Corpus Practice and Procedure*, § 23.3b (9th ed. 1998)).

In Arizona, however, for non-capital cases "review need not be sought before the Arizona Supreme Court in order to exhaust state remedies."  *Swoopes v. Sublett*, 196 F.3d 1008, 1010 (9th Cir. 1999); *see also Crowell v. Knowles*, 483 F.Supp.2d 925 (D. Ariz. 2007); *Moreno v. Gonzalez*, 962 P.2d 205 (Ariz. 1998).  Additionally, the Supreme Court has further interpreted § 2254(c) to recognize that once the state courts have ruled upon a claim, it is not necessary for an applicant to seek collateral relief for the same issues already decided upon direct review.  *Castille v. Peoples*, 489 U.S. 346, 350 (1989).

## C.   *Procedural Default*

### 1.  **In General**

"A habeas petitioner who has defaulted his federal claims in state court meets the technical requirements for exhaustion; there are no state remedies any longer 'available' to him."  *Coleman v. Thompson*, 501 U.S. 722, 732 (1991).  The Ninth Circuit Court of Appeals explained the difference between exhaustion and procedural default as follows:

> The exhaustion doctrine applies when the state court has never been presented with an opportunity to consider a petitioner's claims and that opportunity may still be available to the petitioner under state law.  In

1
2
3
4
5
6
7
8
9
10

contrast, the procedural default rule barring consideration of a federal claim applies only when a state court has been presented with the federal claim, but declined to reach the issue for procedural reasons, or if it is clear that the state court would hold the claim procedurally barred. *Franklin v. Johnson*, 290 F.3d 1223, 1230 (9th Cir. 2002) (internal quotation marks and citations omitted). Thus, in some circumstances, a petitioner's failure to exhaust a federal claim in state court may *cause* a procedural default. *See Sandgathe v. Maass*, 314 F.3d 371, 376 (9th Cir. 2002); *Beaty v. Stewart*, 303 F.3d 975, 987 (9th Cir. 2002) ("A claim is procedurally defaulted 'if the petitioner failed to exhaust state remedies and the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred.'") (quoting *Coleman v. Thompson*, 501 U.S. 722, 735 n. 1, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991)).

11
12
13

*Cassett v. Stewart*, 406 F.3d 614, 621 n.5 (9th Cir. 2005). "Together, exhaustion and procedural default promote federal-state comity." *Shinn v. Ramirez*, 142 S. Ct. 1718, 1732 (2022).

14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Thus, a prisoner's habeas petition may be precluded from federal review due to procedural default in two ways. First, where a "petitioner failed to exhaust state remedies and the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred." *Coleman*, 501 U.S. at 735 n.1 (citations omitted). In this circumstance, the federal court "must consider whether the claim could be pursued by any *presently available* state remedy." *Cassett*, 406 F.3d at 621 n.6 (quotations and citations omitted) (emphasis in original). Second, where the petitioner presented his claims to the state court, which denied relief based "on a state law ground that is independent of the federal question and adequate to support the judgment." *Coleman*, 501 U.S. at 728. Federal courts are prohibited from review in such cases because they have "no power to review a state law determination that is sufficient to support the judgment, [because] resolution of any independent federal ground for the decision could not affect the judgment and would therefore be advisory." *Id.* This is true whether the state law basis is substantive or procedural. *Id.* (citations omitted).

In Arizona, a petitioner's claim may be procedurally defaulted where he has waived his right to present his claim to the state court "at trial or on appeal or in any previous collateral proceeding[.]"  Ariz. R. Crim. P. 32.2(a)(3) (2022).  If an asserted claim "raises a violation of a constitutional right that can only be waived knowingly, voluntarily and personally by the defendant[,]" such claim is not automatically precluded. *Id.*  Neither Rule 32.2. nor the Arizona Supreme Court has defined claims of "sufficient constitutional magnitude" requiring personal knowledge before waiver.  *See id.*; *see also Stewart v. Smith*, 46 P.3d 1067 (Ariz. 2002).   The Ninth Circuit Court of Appeals recognized that this assessment "often involves a fact-intensive inquiry" and the "Arizona state courts are better suited to make these determinations."  *Cassett*, 406 F.3d at 622.

## 2.  Overcoming a Procedural Bar

Where a habeas petitioner's claims have been procedurally defaulted, a petitioner must show cause and actual prejudice to overcome the bar on federal review.  *Teague v. Lane*, 489 U.S. 288, 298 (1989) (holding that failure to raise claims in state appellate proceeding barred federal habeas review unless petitioner demonstrated cause and prejudice); *see also Smith v. Murray*, 477 U.S. 527, 534 (1986) (recognizing "that a federal habeas court must evaluate appellate defaults under the same standards that apply when a defendant fails to preserve a claim at trial.").   "[T]he existence of cause for a procedural default must ordinarily turn on whether the prisoner can show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule."  *Murray v. Carrier*, 477 U.S. 478, 488 (1986); *see also Martinez-Villareal v. Lewis*, 80 F.3d 1301, 1305 (9th Cir. 1996) (petitioner failed to offer any cause "for procedurally defaulting his claims of ineffective assistance of counsel, [as such] there is no basis on which to address the merits of his claims.").   Actual prejudice requires a habeas petitioner to "show not merely that the errors . . . created a *possibility* of prejudice, but that they worked to his *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions."  *Murray*, 477 U.S. at 494 (emphasis in original) (internal quotations omitted).   Without a showing of both cause and

prejudice, a habeas petitioner cannot overcome the procedural default and gain review by the federal courts.  *Id.* at 494–96.

The Supreme Court has recognized, however, that "the cause and prejudice standard will be met in those cases where review of a state prisoner's claim is necessary to correct 'a fundamental miscarriage of justice.'"  *Coleman v. Thompson*, 501 U.S. 722 (1991) (quoting *Engle v. Isaac*, 456 U.S. 107, 135 (1982)).  "The fundamental miscarriage of justice exception is available 'only where the prisoner *supplements* his constitutional claim with a colorable showing of factual innocence.'"  *Herrara v. Collins*, 506 U.S. 390, 404 (1993) (emphasis in original) (quoting *Kuhlmann v. Wilson*, 477 U.S. 436, 454 (1986)).  Thus, "'actual innocence' is not itself a constitutional claim, but instead a gateway through which a habeas petitioner must pass to have his otherwise barred constitutional claim considered on the merits."  *Herrara*, 506 U.S. at 404.  Further, to demonstrate a fundamental miscarriage of justice, a habeas petitioner must "establish by clear and convincing evidence that but for the constitutional error, no reasonable factfinder would have found [him] guilty of the underlying offense."  28 U.S.C. § 2254(e)(2)(B).

### III.   STATUTE OF LIMITATIONS

As a threshold matter, the Court must consider whether Petitioner's petition is barred by the statute of limitation.  *See White v. Klizkie*, 281 F.3d 920, 921–22 (9th Cir. 2002).  The AEDPA mandates that a one-year statute of limitations applies to applications for a writ of habeas corpus by a person in state custody.  28 U.S.C. § 2244(d)(1).  Section 2244(d)(1) provides that the limitations period shall run from the latest of:

> (A)   the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B)   the date on which the impediment to filing an application created by the State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

(C)     the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D)     the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1); *Shannon v. Newland*, 410 F.3d 1083 (9th Cir. 2005).  "The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection."   28 U.S.C. § 2244(d)(2). Respondents do not dispute the timeliness of James's petition, and the Court has independently reviewed the records and finds that his original petition (Doc. 1) is timely pursuant to 28 U.S.C. § 2244(d)(1)(A).

## IV.   ANALYSIS

Respondents assert that "[t]his Court should dismiss the petition and deny habeas relief because James' freestanding actual innocence and Fourth Amendment claims are non-cognizable and his remaining claims are procedurally defaulted without excuse." Answer (Doc. 21) at 1.  In reply, Petitioner's attempts to show cause and prejudice for his procedural defaults are nothing more than reiterations of the claims he has alleged.  *See* Petr.'s Reply (Doc. 24).  "[T]o allow a state prisoner simply to ignore state procedure on the way to federal court would defeat the evident goal of the exhaustion rule."  *Shinn v. Ramirez*, 142 S. Ct. 1718, 1732 (2022) (citing *Coleman v. Thompson*, 501 U.S. 722, 732 (1991)).  "Thus, federal courts **must** apply an important 'corollary' to the exhaustion requirement: the doctrine of procedural default."  *Id.* (emphasis added) (quotations and citations omitted).  As discussed below, the Court agrees with Respondents, and finds Petitioner's claims procedurally defaulted.

### A.     *Ground One: Actual Innocence*

Petitioner asserts "[a]ctual innocence by the use of timeline evidence[.]"

- 34 -

Amended Petition (Doc. 6) at 6. First, Petitioner urges that his conviction violated his due process right to a fair trial. Amended Pet. Suppl. (Doc. 6-1) at 7. Petitioner reviewed T.H.'s trial testimony and asserts that "[t]his narrowed the alleged crime timeline[,]" and "proves there was no contact when TH testified 'it' happened." *Id.* at 11–12. From this, Petitioner concludes that "[n]o contact means no crime[,]" and he is therefore innocent. *Id.* at 12.

### 1. <u>No Free Standing Claim</u>

As an initial matter, "[c]laims of actual innocence based on newly discovered evidence have never been held to state a ground for federal habeas relief absent an independent constitutional violation occurring in the underlying state criminal proceeding." *Herrera v. Collins*, 506 U.S. 390, 400 (1993). In other circumstances, the Supreme Court of the United States "ha[s] not resolved whether a prisoner may be entitled to habeas relief based on a freestanding claim of actual innocence." *McQuiggin v. Perkins*, 569 U.S. 383, 392 (2013) (citing *Herrera v. Collins*, 506 U.S. 390, 404–405 (1993)). "In *Herrera*, the Supreme Court did not specify what showing would be required for a habeas petitioner to make out a successful freestanding claim of actual innocence[;] [t]he Court stated only that the threshold would be 'extraordinarily high,' and that the showing would have to be 'truly persuasive.'" *Carriger v. Stewart*, 132 F.3d 463, 476 (9th Cir. 1997) (citing *Herrera*, 506 U.S. at 417, *accord id.* at 426 (O'Connor, J. concurring)). "Requiring affirmative proof of innocence is appropriate because when a petitioner makes a freestanding claim of innocence, he is claiming that he is entitled to relief despite a constitutionally valid conviction." *Id.*

To the extent that Petitioner asserts an actual innocence claim based upon sufficiency of the evidence that he believes is newly discovered, such a claim is non-cognizable. Moreover, the evidence upon which Petitioner relies was presented at trial, and therefore, can neither be considered "new" or adequate to show that no reasonable juror would have convicted him. *McQuiggin*, 569 U.S. at 400–401; *see also Carriger*, 132 F.3d at 477 (quoting *Herrera*, 506 U.S. at 443 (Blackmun, J., dissenting)) ("When a

1   defendant seeks to challenge the determination of guilt after he has been validly

2   convicted and sentenced, it is fair to place on him the burden of proving his innocence,

3   not just raising doubt about his guilt.").

4   ## 2.  Fair Presentation

5   As noted in Section II.B., *supra*, the fair presentation requirement mandates that a

6   state prisoner must alert the state court "to the presence of a federal claim" in his petition.

7   *Baldwin v. Reese*, 541 U.S. 27, 31–33 (2004).  "[A] petitioner satisfies the exhaustion

8   requirement if he properly pursues a claim (1) throughout the entire direct appellate

9   process of the state, or (2) throughout one entire judicial postconviction process available

10  in the state."  *Casey v. Moore*, 386 F.3d 896, 916 (9th Cir. 2004) (quoting Liebman &

11  Hertz, *Federal Habeas Corpus Practice and Procedure*, § 23.3b (9th ed. 1998)).  In other

12  words, "a petitioner must properly raise [a claim] on **every level** of direct review."  *Id.*

13  (emphasis added) (citing *Ortberg v. Moody*, 961 F.2d 135, 137 (9th Cir. 1992)); *see also*

14  *Baldwin*, 541 U.S. at 29 (fair presentation requires a prisoner to raise his claims "in each

15  appropriate state court").

16  Petitioner did not raise his actual innocence claim as a gateway for a due process

17  violation on direct appeal or in his *pro se* PCR petition to the trial court.  *See* Answer

18  (Doc. 21), Appellant's Opening Br., *State v. James*, No. 2 CA-CR 2015-0447 (Ariz. Ct.

19  App. July 7, 2016) (Exh. "B") (Doc. 21-1); Answer (Doc. 21), Petr.'s Pet. for PCR, *State*

20  *v. James*, No. CR-20141325-001 (Pima Cnty. Super. Ct. May 8, 2018) (Exh. "L1") (Doc.

21  21-2).  Furthermore, Petitioner did not raise this claim to the Arizona Court of Appeals

22  on review of his PCR petition.  *See* Answer (Doc. 21), Petr.'s Not. of Filing Pet. for

23  Review for Denial of Pet. for PCR *pro se*, *State v. James*, No. 2 CA-CR 2020-0044-PR

24  (Ariz. Ct. App. Feb. 28, 2020) (Exh. "S") (Doc. 21-6).  As such, Petitioner's claim is

25  procedurally defaulted and unavailable for review unless he can show cause and

26  prejudice for the default.

27  ## 3.  No Cause and Prejudice to Excuse Default

28  Where a habeas petitioner's claims have been procedurally defaulted, the federal

- 36 -

courts are prohibited from subsequent review unless the petitioner can show cause and actual prejudice as a result. *Teague v. Lane*, 489 U.S. 288, 298 (1989) (holding that failure to raise claims in state appellate proceeding barred federal habeas review unless petitioner demonstrated cause and prejudice). Petitioner has not met his burden to show either cause or actual prejudice. *Murray v. Carrier*, 477 U.S. 478, 494 (1986) (Petitioner "must show not merely that the errors . . . created a *possibility* of prejudice, but that they worked to his *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions") (emphasis in original) (internal quotations omitted); *see also Martinez-Villareal v. Lewis*, 80 F.3d 1301, 1305 (9th Cir. 1996) (petitioner failed to offer any cause "for procedurally defaulting his claims[,] . . . [and as such,] there is no basis on which to address the merits of his claims."). Neither has Petitioner "establish[ed] by clear and convincing evidence that but for the constitutional error, no reasonable factfinder would have found [him] guilty of the underlying offense." 28 U.S.C. § 2254(e)(2)(B). Accordingly, Petitioner's claim is procedurally defaulted and precluded from habeas review.

### B.    *Ground Two: Jury Tampering*

Petitioner claims that "[j]ury tampering [occurred] by a group of Hells Angels who wore leather jackets with the insignia Bikers Against Child Abuse." Amended Petition (Doc. 6) at 7. Petitioner asserts that the actions of these individuals deprived him of his rights to due process and a fair and impartial jury. *Id.* at 7; Amended Pet. Suppl. (Doc. 6-1) at 17, 19. Petitioner further asserts that his trial counsel was ineffective because he "ignored the men who tampered with the jury every day of trial." Amended Petition (Doc. 6) at 7; Amended Pet. Suppl. (Doc. 6-1) at 18.

### 1.  <u>Due Process and Fair and Impartial Jury</u>

In his PCR Petition, Petitioner alleged that the Hells Angels members in the gallery "influenced my Jury by wearing their jackets to the courthouse and by verbally and nonverbally comunicating [sic] with members of my Jury[,] [and] [i]t is very possible that they talked directly or indirectly around my Jurors about my case." Answer (Doc.

21), Petr.'s Pet. for PCR at 35, *State v. James*, No. CR-20141325-001 (Pima Cnty. Super. Ct. May 8, 2018) (Exh. "L1") (Doc. 21-2).  Petitioner complained that the Hells Angels' members "wore jackets with large letters saying Bikers Against Sex Abuse on them" and opined that he was "positive these men tampered with my jury." *Id.*, Exh. "L1" at 35. Petitioner "fe[lt] they could have intimidated and influenced the Jurors by their presence and talking to them when others weren't looking." *Id.*, Exh. "L1" at 36.  Petitioner relied on Arizona state law prohibiting jury tampering and his "right to a speedy and public trial, by an impartial jury" under the United States Constitution in making his arguments. *Id.*, Exh. "L1" at 35 (citing A.R.S. 13-2807; then citing U.S. Const.).  Relying on Rule 32.2, Arizona Rule of Criminal Procedure, the Rule 32 court found this issue could have been raised on direct appeal, but was not.   Answer (Doc. 21), *State v. James*, No. CR20141325-001, Ruling—In Chambers Ruling Re: Pet. for PCR at 156–57 (Pima Cnty. Super. Ct. Nov. 19, 2019) (Exh. "O") (Doc. 21-5).  As such, the Rule 32 court precluded the claim. *Id.*, Exh. "O" at 157.  The court went on to find that the claim was not "among the exceptions listed in Rule 32.2(b), Ariz. R. Crim. P."  Answer (Doc. 21), Exh. "O" at 157.

On appeal of his PCR petition, Petitioner asserted that the trial court "erred in precluding the issue of jury tampering by the use of Bikers against child abuse (BACA) jackets using rule 32.2(1)."  Answer (Doc. 21), Petr.'s Not. of Filing Pet. for Review for Denial of Pet. for PCR *pro se* at 43, *State v. James*, No. 2 CA-CR 2020-0044-PR (Ariz. Ct. App. Feb. 28, 2020) (Exh. "S") (Doc. 21-6).  Petitioner argued that "[t]he Hells Angels Motorcycle Club used intimidation, verbal and nonverbal comunication [sic] with the jury by attending all four days of trial wearing BACA jackets in and around the courthouse and in the courtroom."  *Id.*, Exh. "S" at 48.  Petitioner opined that this was jury tampering in violation of his due process rights and prohibited him from receiving a fair trial. *Id.*, Exh. "S" at 48–49.  The appellate court observed that "[t]he trial court summarily dismissed [Petitioner's PCR] petition[,] [and] . . . found James's claims of trial error were precluded because they could have been raised on direct appeal[.]"

Answer (Doc. 21), *State v. James*, No. 2 CA-CR 2020-0044-PR, Mem. Decision at 70 (Ariz. Ct. App. June 23, 2020) (Exh. "T") (Doc. 21-6).   The appellate court further observed that "[a]lthough [Petitioner] complain[ed] the trial court erred in finding his claims of trial error precluded, he d[id] not address the court's basis for that conclusion: that he could have raised the claims on appeal." *Id.*, Exh. "T" at 71 (citing Ariz. R. Crim. P. 32.2(a)(3)).

The Arizona procedural rule is an independent and adequate state law ground precluding federal habeas review.   *Stewart v. Smith*, 536 U.S. 856, 860 (recognizing independence of Rule 32 procedural determinations); *Carriger v. Lewis*, 971 F.2d 329, 333 (9th Cir. 1992) (rejecting argument that application of Arizona procedural rules "was so unpredictable and irregular that it does not provide an adequate ground for disposal of [petitioner's] claims.").   Here, the appellate court was explicit in its reliance on the state procedural bar rule.   *Harris v. Reed*, 489 U.S. 255, 264 (1989).   Neither has Petitioner met his burden to show either cause or actual prejudice.   *Murray v. Carrier*, 477 U.S. 478, 494 (1986) (Petitioner "must show not merely that the errors . . . created a *possibility* of prejudice, but that they worked to his *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions") (emphasis in original) (internal quotations omitted); *see also Martinez-Villareal v. Lewis*, 80 F.3d 1301, 1305 (9th Cir. 1996) (petitioner failed to offer any cause "for procedurally defaulting his claims[,] . . . [and as such,] there is no basis on which to address the merits of his claims.").   Nor has Petitioner "establish[ed] by clear and convincing evidence that but for the constitutional error, no reasonable factfinder would have found [him] guilty of the underlying offense." 28 U.S.C. § 2254(e)(2)(B).   Accordingly, Petitioner's claim regarding alleged jury tampering is procedurally defaulted and precluded from habeas review.

## 2.  Ineffective Assistance

Petitioner did not raise his ineffective assistance of counsel claim regarding the Hells Angels' presence in court and their alleged jury tampering on direct appeal or in his *pro se* PCR petition to the trial court.   *See* Answer (Doc. 21), Appellant's Opening Br.,

*State v. James*, No. 2 CA-CR 2015-0447 (Ariz. Ct. App. July 7, 2016) (Exh. "B") (Doc. 21-1); Answer (Doc. 21), Petr.'s Pet. for PCR, *State v. James*, No. CR-20141325-001 (Pima Cnty. Super. Ct. May 8, 2018) (Exh. "L1") (Doc. 21-2).   In his PCR appeal, Petitioner asserted that defense counsel was ineffective because he "saw these men wearing BACA jackets and he should have known as a lawyer that they were jury tampering."  Answer (Doc. 21), Petr.'s Not. of Filing Pet. for Review for Denial of Pet. for PCR *pro se* at 49, *State v. James*, No. 2 CA-CR 2020-0044-PR (Ariz. Ct. App. Feb. 28, 2020) (Exh. "S") (Doc. 21-6).   The appellate court observed that Petitioner "assert[ed], for the first time, that his trial and appellate counsel were ineffective in failing to raise these issues."  Answer (Doc. 21), Exh. "T" at 71.  As such, the appellate court declined to "consider [these] issues raised for the first time on review."  *Id.*, Exh. "T" at 71 (citing Ariz. R. Crim. P. 32.16(c)(2)(B); then citing *State v. Ramirez*, 126 Ariz. 468 (Ariz. Ct. App. 1980)).

Petitioner did not properly raise this claim at every level of review.  "As a general matter, each 'unrelated alleged instance [ ] of counsel's ineffectiveness' is a separate claim for purposes of exhaustion."  *Gulbrandson v. Ryan*, 738 F.3d 976, 992 (9th Cir. 2013) (quoting *Moormann v. Schriro*, 426 F.3d 1044, 1056 (9th Cir. 2005)) (alterations in original).  This means "all operative facts to an ineffective assistance claim must be presented to the state courts in order for a petitioner to exhaust his remedies."  *Hemmerle v. Schriro*, 495 F.3d 1069, 1075 (9th Cir. 2007).  This is "[b]ecause ineffective assistance claims are not fungible, but are instead highly fact-dependent, [requiring] some baseline explication of the facts relating to it[.]"  *Id.*  As such, "a petitioner who presented any ineffective assistance of counsel claim below can[not] later add unrelated instances of counsel's ineffectiveness to that claim."  *Id.* (citations and internal quotations omitted); *see also Date v. Schriro*, 619 F.Supp.2d 736, 788 (D. Ariz. 2008) ("Petitioner's assertion of a claim of ineffective assistance of counsel based on one set of facts, does not exhaust other claims of ineffective assistance based on different facts").  Furthermore, the Arizona procedural rule is an independent and adequate state law ground precluding

federal habeas review.  *Stewart v. Smith*, 536 U.S. 856, 860 (recognizing independence of Rule 32 procedural determinations); *Carriger v. Lewis*, 971 F.2d 329, 333 (9th Cir. 1992) (rejecting argument that application of Arizona procedural rules "was so unpredictable and irregular that it does not provide an adequate ground for disposal of [petitioner's] claims.").  Here, the appellate court was explicit in its reliance on the state procedural bar rule.  *Harris v. Reed*, 489 U.S. 255, 264 (1989).  Neither has Petitioner met his burden to show either cause or actual prejudice.  *Murray v. Carrier*, 477 U.S. 478, 494 (1986) (Petitioner "must show not merely that the errors . . . created a *possibility* of prejudice, but that they worked to his *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions") (emphasis in original) (internal quotations omitted); *see also Martinez-Villareal v. Lewis*, 80 F.3d 1301, 1305 (9th Cir. 1996) (petitioner failed to offer any cause "for procedurally defaulting his claims[,] . . . [and as such,] there is no basis on which to address the merits of his claims.").  Nor has Petitioner "establish[ed] by clear and convincing evidence that but for the constitutional error, no reasonable factfinder would have found [him] guilty of the underlying offense."  28 U.S.C. § 2254(e)(2)(B).  Accordingly, Petitioner's claim regarding trial counsel's alleged ineffectiveness in relation to the Hells Angels' behavior is procedurally defaulted and precluded from habeas review.

## C.    *Ground Three: Admissibility of the Confrontation Call*

Petitioner asserts that "[t]he court erred by denying the motion to suppress the confrontation call because it was illegally intercepted and recorded by law enforcement then allowed to be played during trial."  Amended Petition (Doc. 6) at 8.  Petitioner further urged that "[t]he confrontation call was illegally intercepted and recorded by law enforcement because it violated three Arizona Revised Statutes."  *Id.*  Petitioner also asserted ineffective assistance of trial counsel because he allegedly failed to properly prepare for rebuttal argument during the suppression hearing, as well as ineffective assistance of his lawyer on direct appeal for failing to raise this issue on appeal.  Amended Pet. Suppl. (Doc. 6-1) at 21.

### 1.  **Fourth Amendment**

In general, Fourth Amendment claims are not cognizable in this habeas corpus proceeding.  *Stone v. Powell*, 428 U.S. 465, 494 (1976) ("where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial.").  "The relevant inquiry is whether petitioner had the opportunity to litigate his claim, not whether he did in fact do so or even whether the claim was correctly decided."  *Ortiz-Sandoval v. Gomez*, 81 F.3d 891, 899 (9th Cir. 1996) (citations omitted).  "[I]n the case of a typical Fourth Amendment claim, asserted on collateral attack, a convicted defendant is usually asking society to redetermine an issue that has no bearing on the basic justice of his incarceration."  *Stone*, 428 U.S. at 491 n.31.  Additionally, "the exclusionary rule is a judicially created remedy rather than a personal constitutional right . . . [which is of] minimal utility . . . when sought to be applied to Fourth Amendment claims in a habeas proceeding."  *Stone*, 428 U.S. at 494 n.37.  Additionally, as discussed in Section II.A., *supra*, this Court shall "entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody *in violation of the Constitution or laws of treaties of the United States*."  28 U.S.C. § 2254(a) (emphasis added).  Federal habeas corpus relief is not for the purpose of correcting errors of state law.  *Estelle v. McGuire*, 502 U.S. 62, 67 (1991).

Prior to trial, Petitioner filed a motion to suppress based on "[a]lleged statements attributed to Mr. James [that] were obtained in violation of the statutory requirements of A.R.S. § 13-3988(B); because the call was intercepted and recorded without first obtaining Mr. James' valid consent; and because the call constitutes an unreasonable search and seizure in violation of the Fourth Amendment to the United States Constitution, and Article II, Section 8 of the Arizona Constitution."  Answer (Doc. 21), Def.'s Mot. to Suppress Statements Re: Confrontation Call at 3, *State v. James*, No. CR-20141325-001 (Pima Cnty. Super. Ct. May 15, 2015) (Exh. "AA") (Doc. 21-7).  During a

1    pretrial motions hearing, the Parties submitted on their briefs, and the trial court denied

2    Defendant's suppression motion.  Answer (Doc. 21), *State v. James*, No. CR-20141325-

3    001, Hr'g Tr. at 51–52 (Pima Cnty. Super. Ct. Aug. 20, 2015) (Exh. "CC") (Doc. 21-7).

4         In his PCR petition, Petitioner argued that "[t]he confrontation call used at trial

5    should have been suppressed before trial because it was not legally obtained and recorded

6    and was not voluntarily given."  Answer (Doc. 21), Petr.'s Pet. for PCR at 26, *State v.*

7    *James*, No. CR-20141325-001 (Pima Cnty. Super. Ct. May 8, 2018) (Exh. "L1") (Doc.

8    21-2).  Petitioner asserted that "TH agreed to participate in a confrontation call[,] [but]

9    [s]he was a minor and can not [sic] sign or verbally consent to allow law enforcement to

10   intercept her call."  *Id.*  The Petitioner further alleged that "[t]here is no written or verbal

11   recording of TH or AH giving consent to intercept and record TH's call."  *Id.*  Petitioner

12   speculated regarding the possibility of a *Brady*[16] violation because no record of a consent

13   was provided to his counsel.  Answer (Doc. 21), Exh. "L1" at 26.  Petitioner further

14   asserted that his confession on the call was not voluntary.  *Id.* (citing A.R.S. § 13-

15   3988(A)–(C)).    Petitioner also alleged, without more, that "[t]he confrontation call

16   violated the U.S. Constitution, [F]irst [A]mendment, articles four, five and fourteen

17   which guarentees [sic] freedom against unreasonable search and seizure, or shall be

18   compelled to be a witness against himself or be deprived of life, liberty or property

19   without due process of law."  Answer (Doc. 21), Petr.'s Pet. for PCR at 27, *State v.*

20   *James*, No. CR-20141325-001 (Pima Cnty. Super. Ct. May 8, 2018) (Exh. "L1") (Doc.

21   21-2).  Petitioner urged that the confrontation call caused "unfair prejudice" and because

22   it "was illegal[,] [it] should have been excluded from trial."  *Id.* (citing A.R.S. §§ 13-

23   3010, 13-3012(9)).  Relying on Rule 32.2, Arizona Rule of Criminal Procedure, the Rule

24   32 court found the issue precluded because it could have been raised on direct appeal, but

25   was not.  Answer (Doc. 21), *State v. James,* No. CR20141325-001, Ruling—In Chambers

26   Ruling Re: Pet. for PCR (Pima Cnty. Super. Ct. Nov. 19, 2019) (Exh. "O") (Doc. 21-5).

27   The Arizona Court of Appeals affirmed the Rule 32 court's decision.  Answer (Doc. 21),

28

        [16] *Brady v. Maryland*, 373 U.S. 83 (1963).

*State v. James*, No. 2 CA-CR 2020-0044-PR, Mem. Decision at 71 (Ariz. Ct. App. June 23, 2020) (Exh. "T") (Doc. 21-6).

　　　Based on the foregoing, the Court finds that Petitioner had a full and fair opportunity to litigate any alleged Fourth Amendment violation in the state courts. Accordingly, the Court finds Petitioner's claim precluded upon habeas review. *See Stone*, 428 U.S. at 494, 96 S. Ct. at 3052.

## 2. Ineffective Assistance

　　　Petitioner did not raise his ineffective assistance of counsel claim regarding the confrontation call on direct appeal or in his *pro se* PCR petition to the trial court. *See* Answer (Doc. 21), Appellant's Opening Br., *State v. James*, No. 2 CA-CR 2015-0447 (Ariz. Ct. App. July 7, 2016) (Exh. "B") (Doc. 21-1); Answer (Doc. 21), Petr.'s Pet. for PCR, *State v. James*, No. CR-20141325-001 (Pima Cnty. Super. Ct. May 8, 2018) (Exh. "L1") (Doc. 21-2). Petitioner raised the alleged ineffectiveness of his trial and appellate counsels regarding the confrontation call for the first time in his PCR appeal. Answer (Doc. 21), Petr.'s Not. of Filing Pet. for Review for Denial of Pet. for PCR *pro se* at 42, *State v. James*, No. 2 CA-CR 2020-0044-PR (Ariz. Ct. App. Feb. 28, 2020) (Exh. "S") (Doc. 21-6). The appellate court observed that Petitioner "assert[ed], for the first time, that his trial and appellate counsel were ineffective in failing to raise these issues." Answer (Doc. 21), *State v. James*, No. 2 CA-CR 2020-0044-PR, Mem. Decision at 71 (Ariz. Ct. App. June 23, 2020) (Exh. "T") (Doc. 21-6). As such, the appellate court declined to "consider [these] issues raised for the first time on review." *Id.*, Exh. "T" at 71 (citing Ariz. R. Crim. P. 32.16(c)(2)(B); then citing *State v. Ramirez*, 126 Ariz. 468 (Ariz. Ct. App. 1980)).

　　　Petitioner did not properly raise these claims at every level of review. "As a general matter, each 'unrelated alleged instance [ ] of counsel's ineffectiveness' is a separate claim for purposes of exhaustion." *Gulbrandson v. Ryan*, 738 F.3d 976, 992 (9th Cir. 2013) (quoting *Moormann v. Schriro*, 426 F.3d 1044, 1056 (9th Cir. 2005)) (alterations in original). This means "all operative facts to an ineffective assistance claim

must be presented to the state courts in order for a petitioner to exhaust his remedies." *Hemmerle v. Schriro*, 495 F.3d 1069, 1075 (9th Cir. 2007). This is "[b]ecause ineffective assistance claims are not fungible, but are instead highly fact-dependent, [requiring] some baseline explication of the facts relating to it[.]" *Id.* As such, "a petitioner who presented any ineffective assistance of counsel claim below can[not] later add unrelated instances of counsel's ineffectiveness to that claim." *Id.* (citations and internal quotations omitted); *see also Date v. Schriro*, 619 F.Supp.2d 736, 788 (D. Ariz. 2008) ("Petitioner's assertion of a claim of ineffective assistance of counsel based on one set of facts, does not exhaust other claims of ineffective assistance based on different facts"). Furthermore, the Arizona procedural rule is an independent and adequate state law ground precluding federal habeas review. *Stewart v. Smith*, 536 U.S. 856, 860 (recognizing independence of Rule 32 procedural determinations); *Carriger v. Lewis*, 971 F.2d 329, 333 (9th Cir. 1992) (rejecting argument that application of Arizona procedural rules "was so unpredictable and irregular that it does not provide an adequate ground for disposal of [petitioner's] claims."). Here, the appellate court was explicit in its reliance on the state procedural bar rule. *Harris v. Reed*, 489 U.S. 255, 264 (1989). Neither has Petitioner met his burden to show either cause or actual prejudice. *Murray v. Carrier*, 477 U.S. 478, 494 (1986) (Petitioner "must show not merely that the errors . . . created a *possibility* of prejudice, but that they worked to his *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions") (emphasis in original) (internal quotations omitted); *see also Martinez-Villareal v. Lewis*, 80 F.3d 1301, 1305 (9th Cir. 1996) (petitioner failed to offer any cause "for procedurally defaulting his claims[,] . . . [and as such,] there is no basis on which to address the merits of his claims."). Nor has Petitioner "establish[ed] by clear and convincing evidence that but for the constitutional error, no reasonable factfinder would have found [him] guilty of the underlying offense." 28 U.S.C. § 2254(e)(2)(B). Accordingly, Petitioner's claims regarding trial  and appellate counsel's alleged ineffectiveness in relation to the confrontation call is procedurally defaulted and precluded from habeas review.

### D.      Ground Four: "Interested Persons"

Petitioner asserts that "[t]he court allowed 'interested persons' to serve on Jury [sic] which caused structural error with the Jury."   Amended Petition (Doc. 6) at 9. Petitioner contends that because "the Jury foreman was a former Pima County Sheriff Jail booking supervisor and a current fifth grade school teacher[,] [and] . . . four more current or retired school teachers and one female catholic school maintenance worker [were] on the Jury[,]" his due process rights, and right to a fair and impartial jury, were denied.  *Id.*; Amended Pet. Suppl. (Doc. 6-1) at 22–24.   Petitioner also alleged that "[t]here was ineffective assistance of counsel because he failed to recognize and raise this issue prior to trial or during dire voir [sic]."  Petition (Doc. 6) at 9.

### 1.  Due Process and Fair and Impartial Jury

In his PCR Petition, Petitioner alleged that "Juror #6 . . . [his] Jury foreman intentionally minimized his previous employment by the Pima County Sherrifs [sic] dept as a booking supervisor at the Pima County Jail."  Answer (Doc. 21), Petr.'s Pet. for PCR at 40, *State v. James*, No. CR-20141325-001 (Pima Cnty. Super. Ct. May 8, 2018) (Exh. "L1") (Doc. 21-2).   Petitioner asserted that Juror #6 stated that he was a fifth grade teacher during voir dire.  *Id.*  Petitioner opined that Juror #6 "should not have been allowed on [his] jury[,] [because] [h]e had worked for the same law enforcement agency that had investigated and brought charges against [Petitioner]."  *Id.*  Petitioner further opined that Juror #6 "would have an unconsious [sic] prejudice against sex offenders and other inmates because he helped process every inmate at the Pima County Jail."  *Id.* Petitioner also asserted that his "Jury had five school teachers and one school maintenance worker[,] [which] mean[t] half of [his] Jury was made up of people who had daily contact with children."  Answer (Doc. 21), Exh. "L1" at 41.  Petitioner speculated that "[s]chool teachers would have preexisting prejudices against anyone who they thought would harm any child."  Answer (Doc. 21), Petr.'s Pet. for PCR at 41, *State v. James*, No. CR-20141325-001 (Pima Cnty. Super. Ct. May 8, 2018) (Exh. "L1") (Doc. 21-2).  Petitioner argued that the foreperson and school employees "violated [his] right to

1   an impartial Jury." *Id.*, Exh. "L1" at 40–41.

2       Relying on Rule 32.2, Arizona Rule of Criminal Procedure, the Rule 32 court

3   found these issues could have been raised on direct appeal, but were not. Answer (Doc.

4   21), *State v. James*, No. CR20141325-001, Ruling—In Chambers Ruling Re: Pet. for

5   PCR at 156–57 (Pima Cnty. Super. Ct. Nov. 19, 2019) (Exh. "O") (Doc. 21-5). As such,

6   the Rule 32 court precluded the claims. *Id.*, Exh. "O" at 157. The court went on to find

7   that these claims were not "among the exceptions listed in Rule 32.2(b), Ariz. R. Crim.

8   P." Answer (Doc. 21), Exh. "O" at 157.

9       On appeal of his PCR petition, Petitioner asserted that the trial court "erred in

10  precluding the precluding the issue[s] of allowing the jury foreman to be a former Pima

11  County Sherrif [sic] booking supervisor and a current six[th] grade school teacher[,]" and

12  "allowing the jury to be made up of six 'interested person' school teachers." Answer

13  (Doc. 21), Petr.'s Not. of Filing Pet. for Review for Denial of Pet. for PCR *pro se* at 52,

14  54, *State v. James*, No. 2 CA-CR 2020-0044-PR (Ariz. Ct. App. Feb. 28, 2020) (Exh.

15  "S") (Doc. 21-6). Petitioner urged that "any person 'interested directly, or indirectly[,] in

16  a matter is disqualified from serving for that case.'" *Id.*, Exh. "S" at 52 (quoting *State v.

17  Eddington*, 266 P.3d 1057 (Ariz. 2011)). Petitioner asserted that the jury foreperson "had

18  a[n] interest in the case even if he had sworn during voir dire that he could be fair and

19  impartial." Answer (Doc. 21), Exh. "S" at 53. Petitioner also argued that the six

20  educators "[we]re 'interested persons' who should have been disqualified from jury

21  service[.]" *Id.*, Exh. "S" at 55 (citing A.R.S. § 21-211; then citing Ariz. R. Crim. P.

22  18.4(8); then citing *State v. Eddington*, 266 P.3d 1057 (Ariz. 2011)). Petitioner opined

23  that "[s]chool teachers are interested directly or indirectly in this matter because of their

24  close contact with children . . . [and] might hesitate to join a defense verdict in a child sex

25  case." Answer (Doc. 21), Exh. "S" at 55. The appellate court observed that "[t]he trial

26  court summarily dismissed [Petitioner's PCR] petition[,] [and] . . . found James's claims

27  of trial error were precluded because they could have been raised on direct appeal[.]"

28  Answer (Doc. 21), *State v. James*, No. 2 CA-CR 2020-0044-PR, Mem. Decision at 70

(Ariz. Ct. App. June 23, 2020) (Exh. "T") (Doc. 21-6).  The appellate court further observed that "[a]lthough [Petitioner] complain[ed] the trial court erred in finding his claims of trial error precluded, he d[id] not address the court's basis for that conclusion: that he could have raised the claims on appeal."  *Id.*, Exh. "T" at 71 (citing Ariz. R. Crim. P. 32.2(a)(3)).

The Arizona procedural rule is an independent and adequate state law ground precluding federal habeas review.  *Stewart v. Smith*, 536 U.S. 856, 860 (recognizing independence of Rule 32 procedural determinations); *Carriger v. Lewis*, 971 F.2d 329, 333 (9th Cir. 1992) (rejecting argument that application of Arizona procedural rules "was so unpredictable and irregular that it does not provide an adequate ground for disposal of [petitioner's] claims.").  Here, the appellate court was explicit in its reliance on the state procedural bar rule.  *Harris v. Reed*, 489 U.S. 255, 264 (1989).  Neither has Petitioner met his burden to show either cause or actual prejudice.  *Murray v. Carrier*, 477 U.S. 478, 494 (1986) (Petitioner "must show not merely that the errors . . . created a *possibility* of prejudice, but that they worked to his *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions") (emphasis in original) (internal quotations omitted); *see also Martinez-Villareal v. Lewis*, 80 F.3d 1301, 1305 (9th Cir. 1996) (petitioner failed to offer any cause "for procedurally defaulting his claims[,] . . . [and as such,] there is no basis on which to address the merits of his claims.").  Nor has Petitioner "establish[ed] by clear and convincing evidence that but for the constitutional error, no reasonable factfinder would have found [him] guilty of the underlying offense." 28 U.S.C. § 2254(e)(2)(B).  Accordingly, Petitioner's claim regarding the jury's composition is procedurally defaulted and precluded from habeas review.

### 2.  Ineffective Assistance

Petitioner did not raise his ineffective assistance of counsel claim regarding the jury's composition on direct appeal or in his *pro se* PCR petition to the trial court.  *See* Answer (Doc. 21), Appellant's Opening Br., *State v. James*, No. 2 CA-CR 2015-0447 (Ariz. Ct. App. July 7, 2016) (Exh. "B") (Doc. 21-1); Answer (Doc. 21), Petr.'s Pet. for

PCR, *State v. James*, No. CR-20141325-001 (Pima Cnty. Super. Ct. May 8, 2018) (Exh. "L1") (Doc. 21-2).  In his PCR appeal, Petitioner further alleged that trial counsel was ineffective "because he did not properly prepare for jury selection.  Answer (Doc. 21), Petr.'s Not. of Filing Pet. for Review for Denial of Pet. for PCR *pro se* at 54, 56, *State v. James*, No. 2 CA-CR 2020-0044-PR (Ariz. Ct. App. Feb. 28, 2020) (Exh. "S") (Doc. 21-6).  Petitioner also opined that appellate counsel was ineffective "because he failed to submit this issue on appeal even though the Defendant pointed this out to him."  *Id.*, Exh. "S" at 54.  The appellate court observed that Petitioner "assert[ed], for the first time, that his trial and appellate counsel were ineffective in failing to raise these issues."  Answer (Doc. 21), Exh. "T" at 71.  As such, the appellate court declined to "consider [these] issues raised for the first time on review."  *Id.*, Exh. "T" at 71 (citing Ariz. R. Crim. P. 32.16(c)(2)(B); then citing *State v. Ramirez*, 126 Ariz. 468 (Ariz. Ct. App. 1980)).

Petitioner did not properly raise this claim at every level of review.  "As a general matter, each 'unrelated alleged instance [ ] of counsel's ineffectiveness' is a separate claim for purposes of exhaustion."  *Gulbrandson v. Ryan*, 738 F.3d 976, 992 (9th Cir. 2013) (quoting *Moormann v. Schriro*, 426 F.3d 1044, 1056 (9th Cir. 2005)) (alterations in original).  This means "all operative facts to an ineffective assistance claim must be presented to the state courts in order for a petitioner to exhaust his remedies."  *Hemmerle v. Schriro*, 495 F.3d 1069, 1075 (9th Cir. 2007).  This is "[b]ecause ineffective assistance claims are not fungible, but are instead highly fact-dependent, [requiring] some baseline explication of the facts relating to it[.]"  *Id.*  As such, "a petitioner who presented any ineffective assistance of counsel claim below can[not] later add unrelated instances of counsel's ineffectiveness to that claim."  *Id.* (citations and internal quotations omitted); *see also Date v. Schriro*, 619 F.Supp.2d 736, 788 (D. Ariz. 2008) ("Petitioner's assertion of a claim of ineffective assistance of counsel based on one set of facts, does not exhaust other claims of ineffective assistance based on different facts").  Furthermore, the Arizona procedural rule is an independent and adequate state law ground precluding federal habeas review.  *Stewart v. Smith*, 536 U.S. 856, 860 (recognizing independence of

Rule 32 procedural determinations); *Carriger v. Lewis*, 971 F.2d 329, 333 (9th Cir. 1992) (rejecting argument that application of Arizona procedural rules "was so unpredictable and irregular that it does not provide an adequate ground for disposal of [petitioner's] claims."). Here, the appellate court was explicit in its reliance on the state procedural bar rule. *Harris v. Reed*, 489 U.S. 255, 264 (1989). Neither has Petitioner met his burden to show either cause or actual prejudice. *Murray v. Carrier*, 477 U.S. 478, 494 (1986) (Petitioner "must show not merely that the errors . . . created a *possibility* of prejudice, but that they worked to his *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions") (emphasis in original) (internal quotations omitted); *see also Martinez-Villareal v. Lewis*, 80 F.3d 1301, 1305 (9th Cir. 1996) (petitioner failed to offer any cause "for procedurally defaulting his claims[,] . . . [and as such,] there is no basis on which to address the merits of his claims."). Nor has Petitioner "establish[ed] by clear and convincing evidence that but for the constitutional error, no reasonable factfinder would have found [him] guilty of the underlying offense." 28 U.S.C. § 2254(e)(2)(B). Accordingly, Petitioner's claims regarding trial and appellate counsels' alleged ineffectiveness in relation to jury composition are procedurally defaulted and precluded from habeas review.

### E.   *Ground Five: Double Jeopardy*

Petitioner asserts "Double Jeopardy by the use of duplicious [sic] charges." Amended Petition (Doc. 6) at 10. Petitioner contends that he "was convicted of one count of molestation of a child under twelve years of age ARS 13-410 and one count of sexual conduct with a minor under fifteen ARS 13-1405[,] [which] [b]oth . . . arose from the same act." *Id.* Petitioner argues that molestation is a lesser included charge of the sexual conduct charge and therefore his convictions violate the Double Jeopardy clause. *Id.*; Amended Pet. Suppl. (Doc. 6-1) at 25–27.

In his Petition for PCR, Petitioner asserted that he was "charged twice for the same crime[,]" in violation of Double Jeopardy. Answer (Doc. 21), Petr.'s Pet. for PCR at 38, *State v. James*, No. CR-20141325-001 (Pima Cnty. Super. Ct. May 8, 2018) (Exh.

"L1") (Doc. 21-2).  Relying on Rule 32.2, Arizona Rule of Criminal Procedure, the Rule 32 court found this issue could have been raised on direct appeal, but was not.  Answer (Doc. 21), *State v. James*, No. CR20141325-001, Ruling—In Chambers Ruling Re: Pet. for PCR at 156–57 (Pima Cnty. Super. Ct. Nov. 19, 2019) (Exh. "O") (Doc. 21-5).  As such, the Rule 32 court precluded the claim.  *Id.*, Exh. "O" at 157.  The court went on to find that the claim was not "among the exceptions listed in Rule 32.2(b), Ariz. R. Crim. P."  Answer (Doc. 21), Exh. "O" at 157.

On appeal of his PCR petition, Petitioner alleged that "the court erred in precluding the issue of Double Jeopardy using rule 32.2(1)."  Answer (Doc. 21), Petr.'s Not. of Filing Pet. for Review for Denial of Pet. for PCR *pro se* at 51, *State v. James*, No. 2 CA-CR 2020-0044-PR (Ariz. Ct. App. Feb. 28, 2020) (Exh. "S") (Doc. 21-6).  Petitioner argued that "the two charges [against him] [we]re duplicious [sic]."  *Id.*, Exh. "S" at 51 (citing *State v. Ortega*, 220 Ariz. 320 (Ct. App. 2008)).  Petitioner also asserted that both trial and appellate counsels were ineffective for allegedly "fail[ing] to properly investigate the ARS and prior court cases to find that by definition both charges are duplicious [sic] and are Double Jeopardy."  *Id.*, Exh. "S" at 52.  Petitioner argued that the proper "[r]emedy [wa]s the lesser charge and sentence of molestation should be vacated and the major charge and sentence of sexual conduct should be affirmed."  *Id.*, Exh. "S" at 52.  The appellate court observed that "[t]he trial court summarily dismissed [Petitioner's PCR] petition[,] [and] . . . found James's claims of trial error were precluded because they could have been raised on direct appeal[.]"  Answer (Doc. 21), *State v. James*, No. 2 CA-CR 2020-0044-PR, Mem. Decision at 70 (Ariz. Ct. App. June 23, 2020) (Exh. "T") (Doc. 21-6).  The appellate court further observed that "[a]lthough [Petitioner] complain[ed] the trial court erred in finding his claims of trial error precluded, he d[id] not address the court's basis for that conclusion: that he could have raised the claims on appeal."  *Id.*, Exh. "T" at 71 (citing Ariz. R. Crim. P. 32.2(a)(3)).

The Arizona procedural rule is an independent and adequate state law ground precluding federal habeas review.  *Stewart v. Smith*, 536 U.S. 856, 860 (recognizing

independence of Rule 32 procedural determinations); *Carriger v. Lewis*, 971 F.2d 329, 333 (9th Cir. 1992) (rejecting argument that application of Arizona procedural rules "was so unpredictable and irregular that it does not provide an adequate ground for disposal of [petitioner's] claims."). Here, the appellate court was explicit in its reliance on the state procedural bar rule. *Harris v. Reed*, 489 U.S. 255, 264 (1989). Neither has Petitioner met his burden to show either cause or actual prejudice. *Murray v. Carrier*, 477 U.S. 478, 494 (1986) (Petitioner "must show not merely that the errors . . . created a *possibility* of prejudice, but that they worked to his *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions") (emphasis in original) (internal quotations omitted); *see also Martinez-Villareal v. Lewis*, 80 F.3d 1301, 1305 (9th Cir. 1996) (petitioner failed to offer any cause "for procedurally defaulting his claims[,] . . . [and as such,] there is no basis on which to address the merits of his claims."). Nor has Petitioner "establish[ed] by clear and convincing evidence that but for the constitutional error, no reasonable factfinder would have found [him] guilty of the underlying offense." 28 U.S.C. § 2254(e)(2)(B). Accordingly, Petitioner's claim regarding an alleged Double Jeopardy violation is procedurally defaulted and precluded from habeas review.

## V.      CONCLUSION

Based upon the foregoing, the Court finds that Petitioner Terry Dale James's habeas claims are either non-cognizable or procedurally defaulted and recommends that his Amended Petition (Doc. 6) be dismissed.

## VI.     RECOMMENDATION

For the reasons delineated above, the Magistrate Judge recommends that the District Judge enter an order DISMISSING Petitioner's Amended Petition Under 28 U.S.C. § 2254 for a Writ of Habeas Corpus by a Person in State Custody (Non-Death Penalty) (Doc. 6).

Pursuant to 28 U.S.C. § 636(b) and Rule 72(b)(2), Federal Rules of Civil

Procedure, any party may serve and file written objections within fourteen (14) days after being served with a copy of this Report and Recommendation.  A party may respond to another party's objections within fourteen (14) days after being served with a copy.  Fed. R. Civ. P. 72(b)(2).  No replies shall be filed unless leave is granted from the District Judge.  If objections are filed, the parties should use the following case number:  **CV-21-0091-TUC-JCH**.

Failure to file timely objections to any factual or legal determination of the Magistrate Judge may result in waiver of the right of review.

Dated this 26th day of April, 2023.

Eric J. Markovich
United States Magistrate Judge